No. 2834

Second Circuit

## STATE EX REL. G. M. LOMAX LUMBER COMPANY v. THIGPEN, TAX COLLECTOR, ET AL.

(December 11, 1926. Opinion and Decree.)

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Appeal—Par. 625.**

The finding of the trial court on a question of fact, namely, the value of timber being clearly correct, is affirmed.

2. **Louisiana Digest—Licenses—Par. 6, 17.**

In view of Section 21, of Article X of the Constitution of 1921, and Section 1, of Act 140 of 1922, the amount of the license tax paid for the privilege of severing timber from land is based upon the value of the timber severed and not upon its value when severed.

Appeal from the Third Judicial District Court of Louisiana, parish of Lincoln. Hon. S. D. Pearce, Judge.

Action by the State, ex rel. G. M. Lomax Lumber Co. against A. J. Thigpen, Tax Collector, et al. Enjoining the collection of severance tax on timber.

There was judgment for defendant and plaintiff appealed.

Judgment reversed and injunction made perpetual.

Dhu Thompson, of Ruston, attorney for plaintiff, appellant.

Percy Saint, of New Orleans, attorney general, and Michael M. Irwin, of New Orleans, assistant attorney general, for defendants, appellees.

ODOM, J.  Relator is engaged in the sawmill business in the parish of Lincoln, and during a certain period of time cut and manufactured into lumber 10,048,133 feet of pine timber.

Under the provisions of Act 140 of 1922, it made quarterly reports to W. N. Mc-Farland, Supervisor of Public Accounts, and to the tax collector of Lincoln parish where its business was conducted, showing the amount of timber severed and paid the severance tax required by that Act, based upon a stumpage value of $2.00 per thousand feet.

The Supervisor of Public Accounts accepted the payments and issued receipts therefor, but not in full payment of the amount due, claiming that the stumpage value of the timber severed should be placed at not less than $4.00 per thousand feet.

Upon the refusal of the relator to pay the severance tax based upon a valuation of $4.00 per thousand feet the Supervisor of Public Accounts made demand for the balance which he claimed to be due and subsequently caused to be recorded in the mortgage records of Lincoln parish the lien and privilege on relator's property for the balance claimed to be due, all as provided by section 11 of Act 140 of 1922.

Alleging that the tax collector of Lincoln parish was about to seize and sell its property under and by virtue of said lien to enforce the payment of said balance which, it alleges, is not due, relator brought the present suit to enjoin and restrain the tax collector and supervisor of public accounts from seizing and selling its property to satisfy said claim and to have cancelled and erased from the mortgage records of Lincoln parish the lien and privilege resulting from the recordation of said affidavit.

The answer admits the contemplated seizure and sale of relator's property as alleged, and sets up that relator is due the amount claimed and asks that plaintiff's application for writs of injunction be denied and that they be permitted to proceed with the seizure and sale of relator's property to collect the amount claimed, or the sum of $401.86.

The district court gave the defendants judgment for the sum of $100.46 with interest, costs, penalties and attorney's fees, recognizing the lien and privilege of the state, and rejecting relator's application for injunction.

Relator appealed. Respondent answered the appeal, praying that the judgment be amended by allowing the full amount claimed by them or an amount based upon a valuation of $4.00 per thousand feet for the timber cut.

## OPINION.

There are two questions presented for our determination. One is a question of fact, and relates to the value of the timber severed from the soil, relator contending that it was worth not exceeding $2.00 per thousand feet, which is made the basis of value for the payment of the tax and on which valuation relator paid the tax, and respondents claiming that the timber was worth not less than $4.00 per thousand feet, which should have been made the basis of value for the amount of the tax.

The other question is one of law, and calls for a determination of the question whether the stumpage value of the timber; that is, its value as it stood in the forest before being cut down, or its value after being cut down and thereby severed,

STATE EX REL. LOMAX LBR. CO. v. THIGPEN, ET AL.

STATE ĖX REL. LOMAX LBR. CO. v. THIGPEN, ET AL.        **199**

should be the basis for the computation of the tax.

On the question of fact, we think the findings of the district court are correct. He found that the stumpage value of the timber or its value as it stood before being cut down, was $2.00 per thousand feet. His findings were based upon the testimony of some seven or eight witnesses, all of them being competent to testify as to the value of timber, some of them being practical timber men and some of them being experienced sawmill men in that vicinity. Their testimony, taken as a whole, shows conclusively that the timber severed by relator was not worth more than $2.00 per thousand feet. There were deeds introduced in evidence showing that in 1922, only a short while before some of the timber was cut, relator purchased the timber at a stumpage value of $2.00 per thousand feet. Respondents offered no testimony to the contrary.

Respondents offered to prove that other concerns engaged in severing timber from the soil had paid the severance tax based upon a valuation of $4.00 per thousand feet. This testimony was properly excluded upon objection by relator. The fact that some timber is worth $4.00 per thousand feet throws no light upon the value of that severed by relator. The value of timber is governed largely by its kind, quality, location and accessibility. Virgin timber is worth ordinarily more than second growth or what is called "old field" timber. Timber located near a railroad or water course is worth more than timber of like quality situated in remote sections and not easily logged.

The testimony shows that the timber cut by relator was second growth pine situated in rough, rugged and hilly sections of the parish and quite remote from transportation facilities. Some of it had to be pulled out of the gulches with blocks and lines and could not be handled with teams at all. It was badly scattered; the ten million feet cut and reported being taken from approximately ten thousand acres of land, or an average cut of about one thousand feet per acre. It was a very expensive logging proposition, the plaintiff testifying that the expense of logging was almost prohibitive. All the land from which the timber was cut had been previously cut over and the best timber removed.

The testimony shows conclusively that the stumpage value of the timber was not over $2.00 per thousand feet.

On the question of law involved, we think the court erred. He held, correctly we think, that the value of the timber as it stood in the forest or the stumpage value was $2.00 per thousand feet, but as a basis for computing the amount of the severance tax to be paid he added to the stumpage value the cost of cutting the trees down or severing them from the soil, holding that the tax should be based upon the value of the timber after it was cut. He found from the evidence that it cost fifty cents per thousand feet to cut the trees down and that therefore the timber was worth fifty cents per thousand feet more when severed from the land than while standing, and he computed the tax on a valuation of $2.50 per thousand feet.

Section 21 of Article X of the Constitution of 1921 provides that—

"Taxes may be levied on natural resources severed from the soil or water, to be paid proportionately by the owners thereof at the time of severance. Such natural resources may be classifed for the purpose of taxation and such taxes pedi-

cated upon either the quantity or value of the product at the time and place where it is severed. * * *."

Section 1 of Act 140 of 1922 provides that—

"Taxes as authorized by section 21 of Article X of the Constitution of 1921 are hereby levied upon all natural resources severed from the soil or water; including all forms of timber. * * * Such taxes shall be paid by the owner or proportionately by the owners thereof at the time of severance, etc.".

And—

"On oil and gas three per centum (3%) of the gross market value of the total production thereof. On all other natural resources, two per centum (2%) of the gross market value of the total production thereof. For the purposes of this act said gross market value of each such product or natural resource shall be computed in its unmanufactured state and as of the time when and at the place where it was severed or taken from the soil or water."

The learned judge of the district court in a written opinion said, after quoting all of section 21 of Article X of the Constitution and a part of section 1 of Act 140 of 1922:

"Reading the above quoted provision of the state constitution and the above quoted section of Act 140 of 1922, either separately or together and it would be difficult to construe them to mean anything else than that the tax is due upon the severed product, which means when it shall have become a severed product, and not before it shall have become a severed product."

And, again—

"The standing timber is not subject to the severance tax, and could not be even by legislative act without the commission of an egregious misnomer in the use of the word 'severance'."

As we interpret the constitutional and statutory provisions with reference to severance taxes, in so far as the tax on timber is concerned, it was not intended that the amount of the tax should be computed on the value of the timber after it is severed from the land.

It is true that there is no severance tax on standing timber, for the reason that the severance tax as permitted by the constitution and levied and required by the statute is not a property tax but is an excise or license tax paid for the right or privilege of cutting or severing the timber from the land.

Gulf Refining Co. of La. vs. McFarland, 154 La. 251, 97 South. 433.

The amount of the license tax which is paid for the privilege of severing the timber from the land is based upon the value of the timber severed, not upon its value when severed as held by the district court.

According to Webster, the word "severance" in law means—

"The act of severing; division of the provisions, rights and liabilities or the like, arising under or in something; destruction of the unity of interest under or in something."

According to Black's Law Dictionary, second edition, page 1081, the word "severance" with reference to estates means—

"The destruction of one of the unities of a joint tenancy; it is so called because the estate is no longer a joint tenancy but is severed. The word 'severance' is also used to signify the cutting of crops, such as grain, grass, etc., or the separating of any of them from the realty."

Timber, before being manufactured into lumber, must first be severed from the land. For the privilege of severing it or for the act of severing the state exacts

a license tax, and under the exact language of the constitution the license tax is based on the

"* * * value of the product at the time and place where it is severed";
and, under the statute,

"* * * for the purpose of this act said gross market value of each such product or natural resource shall be computed in its unmanufactured state, and as of the time when and at the place where it was severed or taken from the soil or water."

The language of the constitution and of the statute means simply that as a basis for the tax the value of the timber at the time it was severed or at the time the act of severance took place must be taken. The phrase "at the time it is severed" does not mean "at the time after it is severed" as held by the district judge.

In order that there might be no misapprehension on this point the act specifically provides that the gross market value of each such product or natural resource shall be computed in its unmanufactured state.

The timber which relator cut had been sold to it separate and apart from the land. By the act of sale there was created a separate estate. The timber was real estate and had a market value as it stood on the land, which value is shown to be $2.00 per thousand feet. It was a natural resource of the state and for the privilege of severing it from the soil the state exacted and the relator paid two per centum of its market value.

For the reasons assigned, it is therefore ordered, adjudged and decreed that the judgment appealed from be reversed and avoided; and, proceeding now to render such judgment as should have been rendered in the first instance, it is there-fore ordered, adjudged and decreed that there be judgment in favor of relator G. M. Lomax Lumber Company and against respondents A. J. Thigpen, Tax Collector, and W. N. McFarland, Supervisor of Public Accounts, perpetually enjoining and restraining them from seizing and selling the property of relator to satisfy the amount claimed as balance due on severance tax on the amount of timber involved in this suit; and further ordered that the lien and privilege on the property of relator resulting from the recordation of the affidavit of W. M. McFarland, Supervisor of Public Accounts, in book DD, page 84, be cancelled and erased from the mortgage records of Lincoln parish, Louisiana, and that all demands of respondents against relator be rejected. Respondents to pay all costs.