UNION TRUST COMPANY OF NEW JERSEY, a corporation,

*v.*

NEW JERSEY WATER AND LIGHT COMPANY, a corporation, et al.

[Decided April 6th, 1922.]

1. The acceptance of interest by the mortgagee after the mortgagor had defaulted in its agreement to replace certain machinery covered by the mortgage, and with full knowledge of such default, does not constitute a waiver of the default.

2. Under a mortgage requiring the mortgagor company in case it sold any obsolete machinery to replace it with new equipment, the substitution for obselete machinery used in the generation of electricity of other machinery which could be used for water purposes only was a breach of the condition which gave the mortgagee the right to foreclose after notice.

3. The mere lapse of time in bringing a suit to foreclose a mortgage after default, in the absence of any proof to work an estoppel, does not bar the right to foreclose.

On bill to foreclose. On pleadings and proofs.

*Mr. Carlyle Garrison* and *Mr. Lindley M. Garrison*, for the complainant.

*Messrs. Durand, Ivins & Carton* and *Mr. Robert H. McCarter*, for the defendants, New Jersey Water and Light Company and Atlantic Coast Electric Light Company.

LEWIS, V. C.

The bill in this case is filed to foreclose a mortgage dated July 31st, 1909, made by the New Jersey Water and Light Company, a corporation of the State of New Jersey, to the Union Trust Company of New Jersey, a corporation of the State of New Jersey, as trustee, upon certain lands and premises situated in the borough of Deal, Monmouth county, New Jersey. The mortgage was given to secure the payment of two hundred and

fifty (250) bonds of the said New Jersey Water and Light Company, of the par value of one thousand dollars ($1,000) each, aggregating two hundred and fifty thousand dollars ($250,000), dated July 31st, 1909, and payable July 31st, 1924, numbered consecutively from 1 to 250, both inclusive, with interest at the rate of five per centum per annum, payable semi-annually on the first day of August and the first day of February in each year thereafter. The Union Trust Company of New Jersey, the mortgagee, was trustee under the mortgage for the bondholders.

Complainant thereafter became the purchaser for a valuable consideration of one hundred and forty of the bonds, numbered 1 to 140, both inclusive, in the aggregate amount of one hundred and forty thousand dollars ($140,000) principal. The balance of the bonds still remained in the hands of the trustee, pursuant to the terms of a certain agreement made between Samuel Ludlow, Jr., and the Atlantic Coast Electric Light Company, on or about June 15th, 1914, defining and limiting the use to which such portion of the bonds should be used.

The Atlantic Coast Electric Light Company is a corporation of the State of New York, and on or about June 15th, 1914, acquired and now owns all of the outstanding capital stock of the New Jersey Water and Light Company, with the exception of a few shares necessary to qualify the directors to act in that capacity. At the time of that transfer the Atlantic Coast Electric Light Company guaranteed the payment of the principal and interest of the one hundred and forty thousand dollars' ($140,000) worth of bonds outstanding and in the hands of complainant. Ludlow was then president of the Union Trust Company, trustee under the mortgage, as well as the owner of practically all the stock of the New Jersey Water and Light Company.

The agreement contained the following clause:

"The party of the second part [the electric light company] agrees that should it at any time dispose of any of the machinery in the plant of the said New Jersey Water and Light Company to be used in its lighting system, the proceeds thereof shall be applied, at the request of the party of the first part [Ludlow] upon the principal of the said bonds. The party of the first part or the then holder of the said guarantee bonds shall secure the consent or release of the trustee of said bonds to such sale."

This agreement was made subject to the approval of the board of utility commissioners, which was later obtained. The mortgage under foreclosure contained the following clause:

"The company, while in possession of the mortgaged premises, shall have full power from time to time, in its discretion, and without interference by the trustee, to dispose of any portion of the equipment, machinery and implements at any time held subject to. the lien of this indenture, which may have become worn out, obsolete or otherwise unfit for such use; and the company agrees to replace the same by new equipment, machinery or implements, which shall, without further conveyance, be and become subject to the lien of this indenture."

The mortgage also contained a clause which provided that:

"In case default shall be made in the performance of any covenant or agreement herein contained, and any such last-mentioned default shall continue for a period of ninety days, with written notice thereof to the company, by the trustee, then in each and every such case the trustee may, in its discretion, and upon written request of the holders of a majority in amount of the said bonds outstanding, shall, on notice in writing, delivered to the company, declare the principal of all the said bonds then outstanding to be due and payable immediately; and upon any such declaration the same shall become and be immediately due and payable; anything in this indenture or in said bonds contained to the contrary notwithstanding."

Complainant charges that certain of the equipment, machinery and implements were removed from the premises covered by the mortgage; and both the water company and the electric light company admit that this was done early in the year 1915, but they claim that they were worn out, obsolete and otherwise unfit for use, and were disposed of under the discretion vested in the mortgagor by the provisions of the mortgage; and that they were replaced by new equipment, machinery and implements; which rendered the plant more efficient than before such replacement, and without impairment of value of the mortgage security.

Complainant contends, however, and the proofs show, that the machinery replaced was of a different character from that removed; and was not designed for or capable of being used in the generation of electricity for lighting purposes; but could be used for water purposes only.

The mortgagee was notified of this change in the machinery at or about the time of the transaction, and a check for one

thousand dollars ($1,000) from the proceeds of the sale was transmitted to it shortly after the sale was consummated, in accordance with the provision of the agreement hereinbefore referred to. The check seems to have been retained for several months, but ultimately, on November 22d, 1915, the mortgagee sent its check to the Atlantic Coast Electric Light Company for $1,001.58, being the amount of the previous remittance with interest, for the reason, it was stated, "That we do not consider that as trustee of the New Jersey Water and Light Company we are justified in retaining or crediting the same to the accounts indicated in the correspondence between us since that date (July 30th, 1915), and that it would appear from your recent letters that you have not complied with the agreements you mentioned, in such manner as to justify us as trustee in accepting or crediting the same as you direct."

The mortgagee, however, appears to have made no other formal objection to the change in the machinery thus made, nor did it in terms indicate that it regarded such change as a default in the terms and agreements of the mortgage until on or about October 28th, 1920, when it gave written notice to the New Jersey Water and Light Company that it regarded the removal of the old machinery, and the failure to replace it in kind, as a default in the performance of the agreement in this respect contained in the mortgage. This alleged default having continued for a period of ninety days after such written notice, foreclosure proceedings were ultimately commenced in May, 1921, by the filing of the bill in this cause; the mortgagee having elected to declare the principal of all of the bonds then outstanding to be due and payable under the terms of the mortgage.

The interest on the bonds had been paid regularly, and accepted by the mortgagee, without reservation, at the regular due dates, down to the time of the filing of the bill. It also appears that since the month of November, 1915, there had been spent by the Atlantic Coast Electric Light Company the sum of fifteen thousand dollars ($15,000) on the line of the light company, and six thousand dollars ($6,000) on the water plant, in addition to the sum of seven thousand nine hundred dollars

($7,900) expended for the machinery which took the place of the electric light machinery that was removed; the same having been in payment for betterments on the plant of the New Jersey Water and Light Company; but none of the money in question being spent for machinery of like character to that removed, or in replacement of the removed machinery.

The electric light that had previously been supplied from the old plant of the New Jersey Water and Light Company has been supplied since the change in the machinery by light generated in the plant of the Atlantic Coast Electric Light Company, defendants contending that this plan is much more economical than the use of the old system that had been installed and was in use by the old company, at the time of the making of the contract with the electric light company. It is admitted that the new machinery is not capable of being used with, at least, equal facility, for the same purposes for which the old machinery was capable of being used; and that the effect and result of the change of machinery was to so change and alter the plant of the defendant, New Jersey Water and Light Company, as to thereby render the same incapable of actually producing or manufacturing electricity or electric current at that plant.

It is also clear, that the defendants have not taken any steps to replace the machinery removed, in kind, since the giving of the notice of the default by the mortgagee.

Defendants have introduced no evidence that would tend to establish that they have changed their position to their detriment by the failure of the mortgage to take advantage of the default promptly after its occurrence, or at any time up to the giving of the notice in October, 1920.

I am of the opinion that the mere acceptance of the interest by the mortgagee after the default complained of, and with full knowledge of it, does not constitute a waiver of the default. *Arkenburgh* v. *Lakeside Assn.*, 56 N. J. Eq. 102-109; *Industrial Land Development Co.* v. *Post*, 55 N. J. Eq. 559; *Bergman* v. *Fortescue*, 74 N. J. Eq. 266; *Camden Safe Deposit Co.* v. *Dialogue*, 75 N. J. Eq. 600; *Baldwin* v. *Van Vorst*, 10 N. J. Eq. 577.

There has been a clear breach of the condition of the agreement with regard to the replacement of the machinery and equipment removed, and, in accordance with the undoubted rule, this gave rise to the immediate right of the mortgagee to foreclose after the lapse of the period specified. *Davis* v. *Flagg, 35 N. J. Eq. 491; Com. Title Co.* v. *Lime Co., 86 N. J. Eq. 450, 458; Camden* v. *Public Service Railway Co., 84 N. J. Law 305, 308.*

The mere lapse of time in bringing foreclosure after the default, in the absence of any affirmative proof to work an estoppel, does not bar the right to foreclose. *Swinley* v. *Force, 78 N. J. Eq. 52, 72; Chalmer* v. *Weston, 27 N. J. Eq. 435.*

I will advise a decree in accordance with these conclusions.