[No. 18359. Department Two. April 24, 1924.]

## J. D. BROOKS, *Appellant*, v. W. BRUMFIELD, *as Administrator etc., Respondent.*[1]

CORPORATIONS (55)—STOCK—SALE—CONTRACT—CONSTRUCTION. On a sale of mining stock, to be paid for as the purchaser receives benefit from the mines, the indebtedness to run and continue without interest for the period of his life, there is no liability to pay except from benefits received from the mines during the purchaser's life, and his estate is not liable for any unpaid balance.

Appeal from a judgment of the superior court for Clallam county, Ralston, J., entered January 10, 1923, in favor of the defendant, dismissing an action to enforce a claim against the estate of a decedent, tried to the court. Affirmed.

*Charles F. Bolin* and *E. L. Bennett,* for appellant.

*W. Brumfield,* for respondent.

MITCHELL, J.—On March 26, 1912, an agreement in writing was entered into and signed by the parties, as follows:

[1]Reported in 225 Pac. 232.

"This agreement entered into this 26th day of March, 1912, between J. D. Brooks party of the first part sells and transfers sixteen thousand one dollar shares to party of the second part at the value of twenty cents per share, total amount $3,200, the same to be paid by second party as he receives benefit from said mines and said indebtedness to run and continue to run as long as said party of the second part shall live and without interest, except the incomes of the said mines be in benefit to said party of the second part, to pay said sum of $3,200, or any part thereof, the certificate of shares in number 268 of the Washington Mining and Milling Company.

"Given at Orting, Washington, this 26th day of March, 1912.          J. D. Brooks, party first part.
"H. M. Guptill, party second part."

A certificate of 16,000 shares of stock was delivered to H. M. Guptill and retained by him until his death in 1921. Upon the appointment and qualification of an administrator of Guptill's estate, Brooks presented a certified claim in the sum of $3,200, less $50 alleged to have been paid under the contract, and, upon the rejection of the claim, this suit was brought to recover judgment against the estate. The trial resulted in a judgment of dismissal, from which the plaintiff has appealed.

It appears that, at the trial, the administrator and heirs of the decedent tendered the stock to the appellant, free and clear of any claim on their part.

The only question on the appeal is whether or not the instrument can serve as a basis for a claim or judgment against the estate of Guptill. It must be answered by ascertaining the meaning and effect of the instrument itself in connection with the delivery of the stock. While the wording of the instrument is somewhat unusual, it is perfectly plain that the recital of the sale and transfer of the stock is no more certain

than that relating to and limiting the manner by which payments were to be made. It does not say simply that the benefits or receipts from the mines shall be applied on the contract or stipulated price of the stock, but, on the contrary, it says that the stock is to be paid for by Guptill "as he receives benefits from said mines." By that means only. That is the source or means of payment designated in the contract, and is made the dominating or controlling feature upon which the sale and transfer of the stock was wholly dependent. In the absence of agreement to the contrary, the sale and delivery of stock at a stipulated price creates an absolute obligation to pay that price at once or within a reasonable time. But here there was, by the terms of the instrument, an agreement to the contrary. Instead of an absolute promise to pay, it was limited and qualified both as to time and means of payment "as he received benefits from said mines."

Still further, as if intending to provide against the very thing the appellant is now contending for, the instrument says, "and the said indebtedness to run and continue as long as said party of the second part shall live and without interest, except the incomes of the said mines be in benefit to said party of the second part to pay said sum of $3,200, or any part thereof." Here was a repetition of the understanding and intent of the parties that Guptill was not obligated beyond the income derived from the mines, with the further understanding that, if by that means he should be unable to pay for the stock during his lifetime, then the obligation should no longer exist; the language being "said indebtedness to run and continue to run as long as said party of the second part shall live." Guptill's only obligation was that, as long as it was necessary during his lifetime, he would apply the receipts from the income represented by the stock on the payment of

the agreed price of the stock until it was paid for. To hold otherwise would be to read entirely out of the contract explicit language which in part is repeated, and this we are not permitted to do under the most elementary rules governing the construction of written contracts.

The action is on the contract, and not on any claim that the decedent had received anything from the mines that he had refused or failed to apply on the contract.

Judgment affirmed.

MAIN, C. J., FULLERTON, and BRIDGES, JJ., concur.