**BREEDING v. RITTERHOFF et al.**

No. 17185.    Opinion Filed Sept. 13, 1927.

(Syllabus.)

1. **Mortgages—Covenant Against Waste— Production Under Subsequent Oil Lease As Conversion Constituting "Waste."**

When, under an oil and gas lease, production is reached, the income ceases to be rents and profits and the fee is impaired and diminished to the extent of the value of the oil and gas which is reduced to possession. Such conversion of the fee pro tanto constitutes waste.

2. **Contracts—Construction — Language of Contract.**

A contract cannot be construed contrary to its explicit language.

3. **Mortgages — Mortgage Covenanting Against Waste and Assigning to Mortgagee the Rights of Mortgagor in All Mineral Leases Held Superior to Oil Lease Subsequently Executed by Mortgagor.**

Where a mortgage provides by one clause that the mortgagor retaining possession, "shall not suffer waste," and by another clause provides "as additional and collateral security," for assignment to the mortgagee of all royalties, revenues, and benefits under all oil, gas, or mineral leases in force or which may thereafter be placed upon the premises, and for payment of such revenues upon demand to such lessees, held, the mortgage is superior to an oil and gas or mineral lease executed after the date of the mortgage.

Error from District Court, Okmulgee County; James Hepburn, Judge.

Action by Marvin Breeding against Harry Ritterhoff et al., on promissory note and to foreclose mortgage. Defendants below were assignees of an oil and gas lease subsequently executed by the mortgagor. Judgment for plaintiff except that mortgage lien of plaintiff was adjudged inferior to subsequent oil and gas lease of defendants, from which plaintiff appeals. Reversed, with directions.

A. K. Little and G. R. Horner, for plaintiff in error.

Malcolm E. Rosser, Humphrey & Campbell, C. C. Julien, and Whipple & Rosenbloom, for defendants in error

RILEY. J. This appeal is brought by the plaintiff below, who instituted the action on a promissory note and to foreclose a real estate mortgage given to secure the payment thereof. After the mortgage in question had been executed and filed for record the mortgagors executed an oil and gas lease to one

P. E. Smith. who assigned various undivided interests therein to certain individuals and corporations, all of whom were made parties defendant. The assignees of the oil and gas lease filed answers alleging that their lease was paramount and superior to plaintiff's mortgage by reason of the fifth paragraph of the mortgage. Judgment was rendered in favor of plaintiff, except that the oil and gas lease was decreed to be paramount and superior to the lien of the mortgage.

Recapitulating: To secure the payment of a promissory note in the sum of $3,200, Harry Ritterhoff and Estelle Ritterhoff executed and delivered to Gum Brothers their real estate mortgage covering the following described real estate lying in Okmulgee county, Okla.: East one-half (½) of northwest quarter and the southwest quarter of the northeast quarter of section 21 in township 12 north, range 14 east of the Indian Meridian. Gum Brothers Company assigned the note and mortgage sued on to plaintiff.

The following clause, referred to as the fifth paragraph, appeared in plaintiff's mortgage:

"As additional and collateral security for the payment of the note and the indebtedness hereinbefore described, said parties of the first part hereby assign to the said party of the second part, its successors and assigns, all of the profits, revenues, royalties, rights and benefits accruing to them under all oil, gas or mineral leases now on said property, or which may hereafter be placed thereon, and the lessee or assignee or sublessee is hereby directed on production of this mortgage or certified copy thereof, to pay said profits, revenues, royalties, rights and benefits to the said party of the second part, its successors and assigns." (C.-M , 17.)

The following clause appeared in the mortgage referred to as the first paragraph thereof:

"The said first parties shall not commit or suffer waste. * * *"

Judgment was rendered in the court below foreclosing the mortgage and granting a judgment upon the note sued on in the petition. The mortgage was ordered foreclosed subject to the existing liens, and the royalties accrued since July, 1924, were ordered to be paid to the receiver appointed. The P. E. Smith lease was adjudged to be valid and paramount and superior to plaintiff's mortgage.

The plaintiff excepted to the ruling of the court that the oil and gas lease executed since the date of the mortgage was super-

ior to the rights of the mortgagee. Motion for new trial was filed and overruled, and the plaintiff brings his case properly before this court on an appeal under the one contention that his mortgage was paramount and superior to the oil and gas lease subsequently executed by the mortgagor. The plaintiff in error contends that nowhere in the mortgage does the mortgagor reserve, nor the mortgagee grant, the right to execute leases; that such subsequent leases should not have priority; that such construction cannot by application be put on the clause assigning the royalties and profits, for such construction is repugnant to the express terms of the mortgage, and the clause in and of itself cannot be interpreted to show any such construction.

It is well established that all persons acquiring an interest in property take such interest subject to the lien of all mortgages then of record. The leases of the defendants in error were executed after the plaintiff's mortgage had been filed of record; they were then subject and inferior to the mortgage, unless there is contained in the mortgage some clause that will take the case out of the general rule.

The defendants in error contend that the plaintiff, by inserting in the mortgage a clause heretofore set out as paragraph 5, established such a provision as did take the case out of the general rule.

It is clear that the mortgage does not in express terms reserve to the mortgagor the right to make oil and gas leases. Paragraph 5 can only be given such effect by implication, for the mortgagor does not specifically reserve the right to make oil and gas leases, nor does it provide that subsequent leases shall have priority over the mortgage.

The mortgage contract provided:

"The said first parties shall not commit or suffer waste. * * *"

In the recent case of Aldridge v. Houston Oil Co., 116 Okla. 281, 244 Pac. 782, it was held:

"When production is reached, the fee is impaired and diminished to the extent of the value of the oil and gas which is brought to the surface and reduced to possession. This would not be income, but conversion of the fee pro tanto, or, as expressed at common law, waste. * * * Rupel v. Ohio Oil Co. (Ind.) 95 N. E. 225; Marshall v. Mellon (Pa.) 36 Atl. 201; Williamson v. Jones (W. Va.) 27 S. E. 411."

The mortgagor had the right to rent or sell, or further incumber the mortgaged real estate or any part thereof, subject to the mortgage; likewise, he had the right to explore for oil, gas, or other minerals, or to permit others by lease to explore, subject, however, to the mortgage, unless otherwise specified, for in the Aldridge Case, supra, it was said until there is development and production, an oil and gas lease conveys no interest in the land, but only a right to use the surface for the purpose of exploration.

Now it is most reasonable to conclude that the parties to the mortgage contract considered that production on an extensive scale might diminish or destroy the value of the mortgaged property. That so considering, the mortgagor stipulated not to commit or suffer waste, and notwithstanding such an agreement, considering the right of the mortgagor to explore, the mortgagee, realizing that despite the stipulation the mortgagor might produce oil and gas and appropriate the minerals, he caused to be inserted the clause for his protection in such event, not intending to grant the mortgagor the right to make oil and gas leases superior to his mortgage nor to permit the production of oil or gas—the mortgagor expressly agreed not to do so by agreeing not to commit or suffer waste—but to protect himself in the event the stipulation was violated. The words of the clause in dispute, "as additional and collateral security," etc., lend force to such a view.

To say that the mortgagee authorized the execution of oil and gas leases by the disputed clause, as contended by defendants in error, is to say that clause 5, by constructive implication, is contrary to the express provisions of the mortgage, paragraph 1, wherein the mortgagor agrees not to commit or suffer waste and that it creates this repugnancy between the clauses of the mortgage which otherwise would be in concord and harmony.

"A contract cannot be construed contrary to its explicit language." Brooks v. Brumfield (Wash.) 225 Pac. 232.

We hold that the proper construction of paragraph 5 of the mortgage, in conjunction with paragraph 1, and the remainder of the mortgage contract, is that as an additional and collateral security for the payment of the debt, in the event the mortgagor should commit or suffer waste, contrary to the terms of the mortgage, then the mortgagee may elect to seize and sequester the royalties accrued as a part of the security; that it does not authorize leases binding upon the mortgagee after a breach of the mortgage.

Jones on Mortgages (7th Ed.) vol. 2, p. 782, says:

"Doubtless a provision may be made in a mortgage which would enable the mortgagor, while remaining in possession, to give leases of the premises which would be binding upon the mortgagee or anyone claiming under him after a breach of the mortgage and possession taken by him under it, but when the circumstances are such that the power reserved by the mortgagor to make leases is repugnant to the purposes of the mortgage, the exercise of it will not avail to make the leases valid beyond the time of a breach of the condition."

See Haven et al. v. Adams et al., 4 Allen (Mass.) 80, a very similar case, wherein plaintiff claimed title under a mortgage executed by a railroad company for security on bonds. The railroad company executed a lease three years subsequent to the mortgage on a portion of the security consisting of a wharf and adjoining tract of land. Four years thereafter there was a default in the mortgage. The tenants under the lease claimed their right under a mortgage clause wherein it was expressly provided the mortgagor reserved the right to make leases, but that court held as follows:

"Now it is obvious that both these leases, if valid, are utterly repugnant to the provisions above stated, for the security of bondholders. They prevent the entry and sale of the property for the payment of interest on the bonds, and they postpone its application to the payment of the principal to an indefinite period, and perhaps forever, for it may be that the income will never be sufficient to pay the lessees their principal and interest. And the lessees have by the terms of their leases a preference over the bondholders under the first mortgage. as absolute as if the leases had been made prior to the mortgage. If the right to create such preference had been so clearly expressed in the mortgage, and stated in the certificate on the bonds, that all parties understood it, the bonds must have been regarded as unsecured, and would have had little or no market value. And if the parties to the mortgage intended that such a right should be reserved, the certificate must be regarded as fraudulent, and as designed to give the bonds a fictitious credit. It is impossible to state a stronger case of repugnance to the object of a grant. And in respect to the terms of the grant. it first conveys a fee simple to the mortgagees, which is made defeasible only by performance of the condition; and after thus transferring the title from the grantors, it purports, upon the construction contended for, to give them a right, at their pleasure, to create new estates for years. for an indefinite length of time, without

regard to the conditions; so that they may grant for years what they have already granted in fee simple. This is repugnance in terms."

It is apparent that if the mortgagors desired to secure the right to create new estates for an indefinite length of time without regard to the condition contained in their mortgage, making defeasible the grant in fee simple, they should have avoided the conclusion that by the express stipulation not to permit waste they excluded the construction by inference which they contend is presented by paragraph 5 of the mortgage. To hold otherwise is to say paragraph 1 of the mortgage is unmeaning and that the mortgage as a whole does not convey the premises in fee defeasible by the condition of payment, when by its words it proposes to do so. If the parties intended that the right be reserved to the mortgagor which would destroy or impair the security of the mortgagee, they were in good faith bound to express it in clear and concise language. This they failed to do. If a deed will bear a double construction and in one sense can effect its purpose, it will receive the construction which will make it efficacious.

The judgment, in so far as it decrees the lease and interest of the defendants in error to be paramount and superior to the lien of the plaintiff's mortgage, is reversed, with directions to the court below to render judgment in favor of the plaintiff and against the defendants, decreeing said lease and the interests of the defendants thereunder to be subject and inferior to the lien of the plaintiff's mortgage, and that the property be sold free and clear of said oil and gas lease.

BRANSON, C. J., MASON. V. C. J., and PHELPS, LESTER, HUNT, and CLARK, JJ., concur.

Note.—See under (1) 40 C. J. p. 968, §553. (2) 13 C. J. pp. 524, 525 §485. (3) 40 C. J. p. 968, §553.