57 So.2d 679

## MILLING v. COLLECTOR OF REVENUE.

### No. 40563.

Feb. 18, 1952.

C. Ellis Ott, Bogalusa, Robert L. Roland and Thomas A. Harrell, Baton Rouge, for respondent-appellant.

Irving R. Saal, R. E. Milling, Jr., and Lawrence K. Benson, all of New Orleans, for petitioner-appellee.

FOURNET, Chief Justice.

The Collector of Revenue for the State of Louisiana is appealing from an adverse judgment of the district court based on its finding that funds received as royalties and bonuses under leases affecting the separate property of the husband fall into the community of acquets and gains—thereby reversing a decision of the State Board of Tax Appeals ordering the appellee, Roberts C. Milling, to pay additional income taxes for the calendar years 1946 and 1947, in the amount of $2,722.39 plus interest, on the theory that such income formed a part of his separate property for tax purposes.

The revenues here concerned were derived from mineral leases affecting lands in which the appellee owns an undivided interest, acquired by him before the creation of the community between him and his wife upon their marriage in 1936. These leases are contracts in the usual form, whereby the

landowner leased his property for a cash consideration (usually termed a bonus), provision being made for delay rentals in case of no drilling, and a royalty of ⅛th on oil, gas, other minerals or kindred products, and 50¢ per long ton on sulphur. Oil was discovered on lands covered by leases executed by appellee before his marriage and at intervals he received his royalty payments, some of which were made to him during 1946 and 1947. No wells were drilled and no production had from lands covered by leases executed by appellee subsequent to his marriage, and as to some of these he received a portion of the initial consideration or bonus, as to others, a portion of the annual rental to keep the leases in effect—these payments being made ·to him in 1946. The revenue from the above sources was reported as community income and the tax paid on that basis.

Upon being advised by the Collector of Revenue in November, 1949, that his income tax payments for the years in question were deficient in specified amounts, appellee first sought review by the Board of Tax Appeals, which Board in due course rendered a decision sustaining the determination of the Collector on the basis of its finding that the taking of oil, gas or other minerals from the land results in a permanent depletion of the estate and therefore a partial alienation thereof, and the revenues so derived remain the separate estate of the owner of the land.

Stating that *ownership* of the income is the fundamental question involved, the ap-

pellee takes the position that (1) under the jurisprudence of this State a mineral lease is not a sale of mineral rights but is an ordinary lease, and royalties and bonuses paid thereunder are rents which, like rents of other separate property of the husband, when collected during marriage fall into the community; moreover, (2) since oil and gas are not susceptible of ownership while in the ground, but only upon being reduced to possession, the ownership of these minerals, represented by payment of royalties, bonuses, etc., was *acquired* during the marriage and the proceeds fall into the community under the express provisions of our Code; but alternatively, if the severance of the minerals be held to be a sale of a portion of the estate, the income must be computed as if a capital asset had been sold, and therefore not taxable until a capital gain has been realized.

The Collector, on the other hand, contends that the royalties and bonuses in question are but substitutes for the assets which petitioner owned at the time of marriage, namely, his right to receive ⅛th of the oil or gas reduced to possession on his leased property, and his right to search for and reduce minerals to possession on his unleased property; that as such they fall into his separate estate and are not rents so as to constitute a profit or fruit within the meaning of Article 2402 of the Civil Code. As supporting his argument he relies in large measure on a holding of the U. S. Circuit Court of Appeal, 5th Circuit, in the

case of Commissioner of Internal Revenue v. Gray, 5 Cir., 159 F.2d 834, 840.

In that case the U. S. Circuit Court placed much emphasis on Gulf Refining Co. v. Garrett, 209 La. 674, 25 So.2d 329, and while recognizing that the original opinion is no authority (it was set aside by the granting of a rehearing, on which the case was remanded), was nevertheless impressed by the "logic of the analysis of the authorities as to the status of a royalty under a right of usufruct" and found the conclusions "persuasive" in reaching its decision that royalties and bonuses on separate property of the husband constituted separate income for income tax purposes.

Whatever may be said of the views expressed in the Garrett case with reference to the existence of a distinction between rent from an ordinary lease and royalty from a mineral lease, they represented the convictions of the author and are not in accord with the jurisprudence of this Court. Moreover, they were never adopted by the Court and cannot be accepted as authoritative, since "By the granting of a rehearing * * * both the decree and the entire supporting opinion of this court on * * original hearing were set aside and vacated." Gulf Refining Co. v. Garrett, supra, On Rehearing, 209 La. at page 702, 25 So. 2d at page 338.

From the inception of litigation with respect to mineral contracts and their interpretation, the articles of the Civil Code specifically covering the contract of lease (un-

der Title IX, "Of Lease," Chapter 2, "Of Letting Out Things"), together with other articles applicable to the ordinary lease under "Conventional Obligations," "Privileges" and "Prescription," have been consistently applied to mineral contracts possessing the characteristics of lease. For example, a lease affecting the whole property where the lessor was the owner of but an undivided interest was held valid under Article 2682, Spence v. Lucas, 138 La. 763, 70 So. 796; the lessor's lien and privilege to secure rentals was recognized under Articles 3218 and 3219, Logan v. State Gravel Co., 158 La. 105, 103 So. 526; cancellation of gas lease for nonpayment of rent when due was ordered under Articles 2046, 2047, 2710, 2712 and 2729, Louisiana Oil Refining Corp. v. Cozart, 163 La. 90, 111 So. 610; the prescription of three years against a claim for arrearage of rent in the form of additional royalties was applied under Article 3538, Board of Com'rs of Caddo Levee Dist. v. Pure Oil Co., 167 La. 801, 120 So. 373; characteristics of a sublease as distinguished from an assignment were determined by application of Article 2725, Roberson v. Pioneer Gas Co., 173 La. 313, 137 So. 46, 82 A.L.R. 1264; remedy of a lessee in the case of disturbance of his possession was concluded under the provisions of Articles 2703 and 2704, Gulf Refining Co. of La. v. Glassell, 186 La. 190, 171 So. 846; the duration and conditions of such leases were held to come within the rule announced in Article 2684, Coyle v. North American Oil Consolidated, On Rehearing,

201 La. 99, 112, 9 So.2d 473; and the lessor was required to fulfill the obligations enumerated in Article 2692. Texas Co. v. State Mineral Board, 216 La. 742, 44 So.2d 841.

In one of the early cases, decided almost twenty-five years ago when the members of the Court were trying to determine the law applicable to a mineral contract of lease, while it was said that "This is not an ordinary lease. It is more in the nature of a license," nevertheless the holding was that "it is governed by the Codal provisions relative to leases." Louisiana Oil Refining Co. v. Cozart, supra, 163 La. at page 93, 111 So. at page 610. The view was subsequently affirmed, so that in a later case the following language was used: "We stress the fact that in every instance where the court had squarely before it the juridical nature or the proper legal classification of a mineral, oil, and gas lease the conclusion was reached that it was a contract of letting and hiring * * *." Gulf Refining Co. of La. v. Glassell, supra, 186 La. at page 200, 171 So. at page 849. The following excerpt shows the uniformity of the jurisprudence in this respect: "This court has consistently applied the codal provisions, whenever possible, to oil and gas leases for many years. Having declined to enact laws for the regulation of the oil industry and, particularly, having declined to adopt a Mineral Code, the Legislature has placed the stamp of approval upon the system of interpretation of oil and gas contracts which

this court has followed for so many years." Tyson v. Surf Oil Co., 195 La. 248, 268–269, 196 So. 336, 343, and in a recent case we observed: *"The rule is well established that mineral leases must be construed as leases, and that the codal provisions applicable to ordinary leases must be applied."* Coyle v. North American Oil Consolidated, supra, 201 La. at page 114, 9 So.2d at page 478—italics ours.

Under this application of the law, it was inevitable that when the question arose as to the nature of royalty, it was held to be *rent* in the form of a portion of the produce of the land, Logan v. State Gravel Co., supra, and "not the payment of a price for the oil or gas rights, as if they were sold", Roberson v. Pioneer Gas Co., supra, 173 La. at pages 319–320, 137 So. at page 48; and the statement that the payment of royalty is the payment of rent appears so often in the jurisprudence of this State that the matter is no longer open to dispute. See Board of Com'rs of Caddo Levee District v. Pure Oil Co., supra; Roberson v. Pioneer Gas Co., supra; Shell Petroleum Corp. v. Calcasieu Real Estate & Oil Co., Inc., 185 La. 751, 170 So. 785; Parker v. Ohio Oil Co., 191 La. 896, 186 So. 604; Robinson v. Horton, 197 La. 919, 2 So.2d 647. Thus we said that although the products of mines and quarries, once taken, would not be reproduced, nevertheless they *"are products of the land,* and *products* may be assimilated to *fruits,* within the meaning of R.C.C. art. 2671. * * * For 'rent [by whatever

name called] is a certain profit in money, provisions, chattels, or labor, issuing out of lands and tenements in retribution for the use.' King v. Harper, 33 La.Ann. 496." Logan v. State Gravel Co., supra, 158 La. at page 109, 103 So. at page 527.

The fruits, both civil and natural, of the husband's separate property fall into the community during its existence, Succession of Goll, 156 La. 910, 101 So. 263; Peters v. Klein, 161 La. 664, 109 So. 349; Succession of Ratcliff, 212 La. 563, 33 So. 2d 114, for the community "consists of the profits of all the effects of which the husband has the administration and enjoyment * * *." Art. 2402, R.C.C. This being true, we know of no compelling reason, nor has any been advanced, why the rentals paid in the form of royalty under a mineral lease on the separate property of the husband should form a part of his separate income, whereas the rentals paid in the form of shares of the crops growing on the same land would fall into the community—since the one is a portion of the production of the minerals, and the other a portion of the crop production. The fact that the question here under consideration involves a tax on income cannot alter the legal nature of the revenue.

The attorneys for the Collector emphasize that the word "profits" in the above quoted portion of Article 2402 is an incorrect translation from the French and should read "fruits," and relying on statements in the case of Elder v. Ellerbe, 135 La. 990, 66 So. 337, 338, that oil is not a fruit since it is not born and reborn of the soil, argue that the revenues here are not "fruits" of the "effects of which the husband has the administration and enjoyment," and do not fall into the community. The question presented in the Ellerbe case was whether a good-faith possessor, upon restoration of the land, must also return the oil or gas, or its price; and the Court said: "The sense in which the word 'fruits' is used in this article of the Code [Art. 3453], i. e., 'the right which such possessor has to *gather* for his benefit the *fruits*,' does not suggest the meaning of minerals. It refers to what is produced and reproduced from time to time or in successive seasons." Clearly the interpretation is inapplicable to the civil fruits of the husband's separate property, which cannot be born and reborn of the soil, yet fall into the community.

The attorneys for the collector also rely on the case of Federal Land Bank of New Orleans v. Mulhern, 180 La. 627, 157 So. 370, 95 A.L.R. 948, and contend that since under that decision the production of oil is a depreciation of security in the land, it is *capital* or *property,* and the revenues therefrom fit the definition of separate property contained in Article 2334 of the Code as being "that which either party brings into the marriage". In the Mulhern case the question presented was whether a mortgagor has a right to foreclose when production of gas occurs under a lease granted subsequent to the mortgage. We cannot see that the

case is determinative of the issues here presented.

Without question the *bonuses* at issue, received in the form of advance consideration for the privilege of going on the land to search for oil and gas, cannot by any stretch of the imagination be termed a "dismemberment of the property amounting to a partial alienation", as was stated in the Gray case, 159 F.2d at page 842. The same may be said of the annual rentals, paid to keep the leases alive without drilling. The royalties under consideration, for their part, are a portion of the product of the land, but being fugacious, belong to nobody until they are captured and impressed with ownership—similar in this respect to a successful hunt for wild birds which may fly over the land or a catch of fish which may be found in streams running through the land. Until captured there is no ownership; and so it is with oil.

Counsel for the Collector close their eyes (as did the U. S. Circuit Court in the Gray case) to the fact that we must accommodate the articles of the Code to fit a substance as to which there was no thought of applying them at the time of the preparation and adoption of our civil law. The problems posed by the development of the immense natural resources underlying the lands of this state have not been without difficulty. Not only must the codal articles (most of which appeared first in the Code of 1808) be adjusted to problems of the present day,

but sight must not be lost of the resultant effect on other legal principles, and due regard must be had to uniformity in the interpretation of the law. Expressions lifted out of context may appear to support a conclusion, but must be read in the light of the problem under consideration; and the narrow interpretation of the codal provisions sought by the Collector in this case cannot be adopted.

Finally, in a supplemental brief the attorneys for the Collector suggest that to come to the conclusion we have here reached will lead to confusion when treating of usufruct, since the usufructuary occupies the same position with reference to the "products" or "fruits" of the property subject to the usufruct as the community occupies with reference to the "profits" or "fruits" of the separate property of the spouses, citing Succession of Andrus, 131 La. 940, 60 So. 623; and if the Court holds that the proceeds resulting from an oil or gas lease on the separate property of the husband (or the separate property of the wife administered by the husband alone or by them jointly) belong to the community, then the usufructuary will likewise have the right to retain as owner all the oil royalties and bonuses which he has received from the land during the existence of the usufruct, thus depleting the land of its value and leaving to the heirs (of the deceased husband or wife) only the naked ownership of the perhaps almost worthless soil.

The supposed problems posed in the above argument are not before the Court here, and necessarily any expression of opinion on the subject would be at best obiter.

For the reasons assigned, the judgment of the district court is affirmed.