(97 South. 433)

No. 25892.

## GULF REFINING CO. OF LOUISIANA v. McFARLAND, Supervisor of Public Accounts.

(April 30, 1923.    Rehearing Denied July 11, 1923.)

*(Syllabus by Editorial Staff.)*

**1. Licenses ⬤━1—Taxes imposed on natural resources severed from the soil held a "severance tax."**

As Act No. 140 of 1922, levying a tax upon all natural resources severed from the soil, etc., in terms refers to Const. 1921, art. 10, § 21, the tax is a "severance tax," levied on the right to sever such natural resources from the soil.

**2. Licenses ⬤━1—Severance tax is not tax on property, but excise tax on privilege.**

The severance tax imposed by Act No. 140 of 1922 on natural resources severed from the soil is not a property tax, but an excise tax upon the privilege of severing, though measured by the value of the property severed.

**3. Licenses ⬤━29—Severance tax not subject to limitation as to amount applying to annual property taxes.**

The tax imposed by Act No. 140 of 1922, pursuant to Const. 1921, art. 10, § 21, on privilege of severing natural resources such as oil and gas from the soil, is not subject to provisions of Const. 1921, art. 10, § 3, limiting annual tax on property to 5¼ mills on the dollar.

**4. Licenses ⬤━7(2)—Equality and uniformity provisions not applicable to severance tax.**

The equality and uniformity clause of the state Constitution (article 10, § 1) refers only to property taxes, and has no application to license taxes or other forms of excise taxes such as the severance tax imposed by Act No. 140 of 1922.

**5. Constitutional law ⬤━230(1)—Tax on production of oil and gas does not violate federal Constitution, though not imposed on oil or gas brought from other states.**

As Act No. 140 of 1922, imposing tax on severance of natural resources such as oil and gas from the soil, accords every one the same privilege of producing or not producing oil or gas from land within the state, it does not discriminate in favor of or against any one in violation of Const. U. S. Amend. 14, though the tax is not imposed on oil or gas brought from other states.

**6. Statutes ⬤━107(6)—Act imposing severance tax held not to embrace more than one object.**

Act No. 140 of 1922, imposing tax on severance of natural resources from the soil, pursuant to Const. 1921, art. 10, § 21, does not in its text or title embrace more than one object, notwithstanding recital in title that object is in part to provide for payment of license tax imposed by Act No. 31 of 1920.

**7. Statutes ⬤━107(1)—All means necessary to carry out object may be included in one statute.**

Const. art. 3, § 16, providing that statutes shall not have more than one object, does not forbid the Legislature to include in one statute all the means necessary to carry out its object.

**8. Licenses ⬤━7(1)—Statutes ⬤━64(8)—Statute imposing severance tax held unconstitutional so far as it keeps earlier tax in force, but not wholly unconstitutional.**

Act No. 140 of 1922, § 21, so far as it keeps the severance tax imposed by Act No. 31 of 1920 in effect after December 31, 1922, is invalid under Const. 1921, art. 10, § 21, but this does not affect its validity or constitutionality in other respects, especially in view of section 22, providing that invalidity shall be confined to particular provision involved.

### On Rehearing.

**9. Licenses ⬤━35—In suit to enjoin collection of privilege tax right to credit for amount paid under early law held not in issue.**

In suit to restrain supervisor of public accounts from collecting severance tax imposed under Act No. 140 of 1922, where petition neither alleged payment of severance tax for the same period under Act No. 31 of 1920, nor claimed credit therefor on the tax to be collected under the act of 1922, there is no issue before the court as to right to such credit.

**10. Licenses ⬤━35—Admission made over objection held not to enlarge issues.**

In suit to enjoin collection of severance tax imposed under Act No. 140 of 1922, admission that plaintiff had paid severance tax for the same period assessed under early law, when objected to by defendant's counsel as irrelevant to the issues, did not enlarge the issues.

**11. Licenses ⊗⟹34—Court powerless to grant plaintiff credit for tax paid under earlier law, where no such issue presented.**

Under Const. 1921, art. 4, § 1, prohibiting withdrawal of public moneys from state treasury except pursuant to specific appropriation, the court, without any such issue properly before it, cannot grant taxpayer credit on severance tax imposed under Act No. 140 of 1922, for amount paid for the same period under earlier law; the remedy being by appropriation by Legislature.

**12. Evidence ⊗⟹83(1) — Not assumed that Legislature will neglect to reimburse taxpayer for amount wrongfully collected.**

It cannot be assumed in advance that members of the Legislature will be tardy in action or derelict in discharge of their duty to make necessary appropriations to reimburse taxpayers for amounts improperly collected under Act No. 31 of 1920, after the severance tax imposed by Act No. 140 of 1922 was in force.

O'Niell, C. J., and St. Paul, J., dissenting on rehearing.

Appeal from Twenty-Second Judicial District Court, Parish of East Baton Rouge; H. F. Brunot, Judge.

Suit by the Gulf Refining Company of Louisiana against W. N. McFarland, Supervisor of Public Accounts. From a judgment for defendant, plaintiff appeals. Affirmed on rehearing.

D. Edward Greer, of Houston, Tex., and J. S. Atkinson and Frederick E. Greer, both of Shreveport (C. C. Bird, of Baton Rouge, of counsel), for appellant.

A. V. Coco, Atty. Gen., Harry P. Sneed, of New Orleans, and Thigpen, Herold & Lee, of Shreveport, for appellee.

Hampden Story, of Shreveport, for Texas Co.

O'NIELL, C. J. This suit is an attack upon the constitutionality of Act 140 of 1922, levying a tax of 3 per cent. on the gross market value of the production of all mineral oil and natural gas produced in the state. The production of mineral oil and natural gas from lands either owned or held under lease by the plaintiff here is an important part of the company's business. The company is therefore liable for the tax if it is valid. The district court decided that it was valid, and plaintiff has appealed.

Appellant's main complaint is that the tax exceeds the limit of 5¼ mills, fixed by section 3 of article 10 of the Constitution, viz.:

"The rate of state taxation on property for all purposes shall not exceed, in any one year, five and one-quarter mills on the dollar of its assessed value."

Defendant's answer to the proposition is that this is a severance tax, not a tax "on property," but a tax on the right to sever or produce the property, and that the authority of the Legislature to levy a severance tax, eo nomine, was conferred by section 21, and therefore was not controlled or prevented by section 3, of article 10 of the Constitution. Section 21 declares:

"Taxes may be levied on natural resources severed from the soil or water, to be paid proportionately by the owners thereof at the time of severance. Such natural resources may be classified for the purpose of taxation and such taxes predicated upon either the quantity or value of the product at the time and place where it is severed. No severance tax shall be levied by any parish or other local subdivision of the state.

"No further or additional tax or license shall be levied or imposed upon oil or gas leases or rights, nor shall any additional value be added to the assessment of land, by reason of the presence of oil or gas therein or their production therefrom. Provided, that until the Legislature shall have enacted laws carrying into effect the provisions of this section, all existing laws relating to severance taxes or licenses, and to the assessment and taxation of land producing oil or gas shall be and remain in full force and effect. Notwithstanding any legislative appropriation heretofore made or any allocation in this Constitution made, the Legislature shall allocate a portion of the severance tax on oil or gas not less than one-fifth of the amount collected therein to the parish from within which such tax is collected; provided, that the amount thus allocated shall not exceed two hundred thousand dollars ($200,000) to any parish in any one year.

"The Legislature shall provide for the dis-

tribution of the funds allocated to the parishes under this provision among the governing authorities having jurisdiction over the territory from within which such resources are severed and tax collected."

The language of Act 140 of 1922 is:

"That, for the year 1923, and for each subsequent year, taxes as authorized by section 21 of article 10 of the Constitution of 1921, are hereby levied upon all natural resources severed from the soil or water," etc.

The tax levied upon the production of oil and gas is "three per centum (3%) of the gross market value of the total production thereof." And the act declares that, for the purposes of the act, the gross market value of the product or natural resource shall be taken in its unmanufactured state, as of the time when and at the place where it was severed or taken from the soil or water.

[1, 2] If the statute did not in terms refer to section 21 of article 10 of the Constitution, it might be doubted that levying the tax upon the natural resources severed from the soil is the same as levying the tax upon the right to sever the natural resources from the soil. But the statement in the statute that the tax levied is that which is authorized by section 21 of article 10 of the Constitution is the same as to say that the tax levied is a severance tax. A severance tax, even though it is measured by the value of the property severed, is not a property tax; it is an excise tax upon the privilege of severing; just as an inheritance tax, even though measured by the value of the property inherited, is not a property tax, but an excise tax on the right of inheriting.

[3] But the question in this case is not whether the tax might, as an abstract proposition, be deemed a property tax. The question is whether the tax, being in excess of 5¼ mills on the dollar, is violative of section 3 of article 10 of the Constitution. It is said in appellant's brief, that if the provisions of section 21 of article 10 were not in the Consti-

tution, the court could not escape the obligation of declaring this tax of 3 per cent., or 30 mills, unconstitutional. It is said that section 21 is not important, because its provisions do not conflict with the limitation imposed in section 3, or permit the Legislature to override section 3. The answer to all of that is that section 21, in terms, authorizes the Legislature to levy a severance tax, which cannot be subject to the limitation of 5¼ mills imposed by section 3, because the latter section, in terms, refers to a yearly tax. It says that the rate of taxation "on property" shall not exceed "in any one year" 5¼ mills on the dollar of its assessed valuation. That means the ad valorem tax that is collected annually on all taxable property, according to its assessed value. To say that the severance tax authorized by section 21 of article 10 of the Constitution is a property tax and is subject to the limitation of 5¼ mills, imposed in section 3, is the same as to say that the authority conferred upon the Legislature by section 21 was not necessary and served no purpose. The manifest purpose was to permit the Legislature to levy a severance tax without regard for the limitation imposed by section 3 of article 10 of the Constitution. The severance tax already levied was not subject to the corresponding limitation of the rate of taxation on property in the Constitution of 1898 and 1913. Under Act 31 of 1920, the severance tax on oil and gas was 2 per cent. Hence it was provided in section 21 of article 10 of the Constitution of 1921 that, until the Legislature should enact laws carrying the provisions of the section into effect, "all existing laws relating to severance taxes or licenses" should remain in full force and effect. We have no doubt that the tax imposed by Act 140 of 1922 was intended to be, and is, not a property tax, or tax upon the ownership of oil and gas, but an excise tax, imposed upon the right to sever or produce the oil and gas. Whether, as an ab-

stract proposition, and without regard for section 21 of article 10 of the Constitution, this tax might be deemed a tax on the property itself, on the ownership of the oil and gas, we are certain that the authority of the Legislature to levy the tax was not subject to the limitation of 5¼ mills on the dollar, imposed in section 3 of article 10 of the Constitution.

[4, 5] Plaintiff's next complaint is that the levy of the tax only on the mineral oil and natural gas that is produced in the state, and not upon oil or gas brought here from other states, is an arbitrary discrimination against the producers of oil and gas in the state, and in favor of the purchasers of oil and gas produced in other states. It is argued, therefore, that the alleged discrimination violates section 1 of article 10 of the Constitution of the state, requiring that taxes shall be uniform on the same class of property throughout the territorial limits of the authority levying the tax; and that the tax is a denial of the equal protection clause, and violates section 1 of the Fourteenth Amendment of the Constitution of the United States. These complaints are disposed of by our conclusion that the tax in question is not a property tax, or tax on the ownership of the oil and gas, but an excise tax, imposed upon the right to produce or sever the products from the land. The equality and uniformity clause in the state Constitution refers only to property taxes. It has no application to license taxes or to any other form of excise taxes. See Standard Oil Co. v. Police Jury, 140 La. 42, 72 South. 802; City of Gretna v. Bailey, 141 La. 638, 75 South. 496. As the statute accords to everybody the same privilege of producing, or not producing, oil or gas from lands in the state, it cannot be said to discriminate in favor of or against any one. The Legislature could not, in truth, impose a severance tax upon the products of another state. If the tax were imposed upon the importation of the mineral products of other states, it would not be a severance tax. Therefore, to argue that the Legislature cannot levy a severance tax or conservation tax upon the natural resources of the state without levying the same tax upon the natural resources of all other states is the same as to say that the Legislature cannot levy a severance tax or conservation tax at all.

[6, 7] The only remaining complaint is that the Act 140 of 1922, in its text and in its title, embraces more than one object, and, in its text, embraces objects not indicated in its title, all in violation of section 16 of article 3 of the Constitution. In that connection, it is said that, besides imposing the new tax of 3 per cent., the statute continues in force the old tax of 2 per cent., imposed by Act 31 of 1920, on the severance of natural resources from the soil. It is said that section 21 of the new act continues the severance tax of 2 per cent. levied by the Act 31 of 1920 in force until March 1, 1923, and that the retention of the tax in force beyond the 31st of December, 1922, when the new tax went into effect, was a violation of section 21 of article 10 of the Constitution.

The Act 140 of 1922 does not have more than one object, either as stated in its title or as contained in its text. The one and only object was to carry into effect the provisions of section 21 of article 10 of the Constitution, by levying the severance tax, or conservation tax, thereby authorized. The further statement in the title of the new act, that its object was to provide for the payment of the license tax imposed by Act 31 of 1920, was not a statement of another or distinct object. The idea was to keep the prevailing tax in force until the new tax would go into effect. That is what section 21 of article 10 of the Constitution required the Legislature to do. It is well settled that the constitutional requirement that a statute shall

154 La.—9

not have more than one object does not forbid the Legislature to include in one statute all of the means necessary to carry out its object. State Board of Medical Examiners v. Fowler, 50 La. Ann. 1358, loc. cit. 1367, 24 South. 809; Thomas v. Board of School Directors, 136 La. 504, 67 South. 345; State v. Doremus, 137 La. 269, 68 South. 605; State v. Guidry, 142 La. 432, 76 South. 843.

[8] The complaint that section 21 of Act 140 of 1922 violates section 21 of article 10 of the Constitution, by keeping the severance tax imposed by Act 31 of 1920 in force beyond the 31st of December, 1922, when the new severance tax went into effect, is not important. The idea, of course, was to obey the requirement of section 21 of article 10 of the Constitution, by keeping the severance tax of 2 per cent. in force until the new tax would go into effect. Section 21 of the Act 140 of 1922, therefore, has this proviso:

"Provided that said license tax is hereby imposed and shall be collectible in accordance with the provisions of said Act 31 of 1920 up to and until the time herein prescribed for the reports and payment of the severance tax levied and as levied by this act; it being the true intent and purpose of this act that said license tax shall be imposed and collected until the time aforesaid; and provided further that all funds thus collected shall be paid into the severance license tax fund as heretofore."

Under section 5 of the Act 140 of 1922, the first quarterly report was required to be made within 30 days after the last day of March, 1923. Section 21 of the statute, therefore, does seem to have kept the old severance tax in force beyond the 31st of December, 1922, when the new tax went into effect. The Legislature was forbidden, by section 21 of article 10 of the Constitution, to keep the old severance tax in effect beyond the time when the new tax would go into effect. In so far, therefore, as section 21 of the Act 140 of 1922 purports to have kept the Act 31 of 1920 in effect beyond the 31st of December, 1922, the new act is not valid. But that does not affect the validity or constitutionality of the law in other respects, especially as it is certain that the Legislature did not intend that section 21 of the Act of 1922 should be interpreted so as to violate the very section of the Constitution which the new statute was intended to put into effect. Section 22 of the Act of 1922 contains this saving clause, which must have its effect, viz.:

"If any clause, sentence, paragraph, or part of this Act shall, for any reason, be adjudged by any Court of competent jurisdiction to be invalid, such judgment shall not affect, impair or invalidate the remainder of this act, but shall be confined in its operation to the clause, sentence, paragraph, or any part thereof, directly involved in the controversy in which such judgment has been rendered."

It is admitted in the statement of facts on which this case was submitted, that the supervisor of public accounts, defendant herein, demanded and collected from plaintiff, for the privilege of producing mineral oil and natural gas during the first quarter of the year 1923, the 2 per cent. severance tax levied by the Act 31 of 1920. The supervisor's demand was perhaps based upon an erroneous interpretation of section 21 of Act 140 of 1922, purporting to keep the old tax in force for the first quarter of the year 1923. The error, very likely, resulted from the fact that, under Act 31 of 1920, the tax for the production in each cycle of three months was computed upon the production of the preceding three months. If the tax had remained in force in 1923, the tax for the production in the first quarter of the year would have been computed upon the production of the last quarter of 1922. Hence the tax which was collected for the first quarter of 1923 was erroneously supposed to be collected for the last quarter of 1922.

Except for the admission mentioned, we doubt that we could appropriately give plaintiff credit for the 2 per cent. tax that has been paid, on the 3 per cent. tax to be paid

under the Act 140 of 1922. It would be very unjust, though, to deny plaintiff the right to deduct from the 3 per cent. tax which must be paid in compliance with this decision, the 2 per cent. tax that was collected under a wrong construction of section 21 of Act 140 of 1922. We have concluded, therefore, to amend the judgment appealed from so as to authorize and require the defendant, supervisor of public accounts, in collecting the 3 per cent. tax which must be paid in compliance with this decree, to give credit for the 2 per cent. tax already paid, as of the date when it was paid. With that amendment,

The judgment appealed from is affirmed, at appellant's cost.

S.T. PAUL, J. (concurring). I concur in the opinion and decree. I think that any tax is an "excise," which is not a capitation tax, or a direct tax on land or personalty, considered as the permanent fortune of the individual taxed, and laid thereon solely by reason of ownership without regard to origin or to the actual or intended use to which it may be put; in other words, a perennial tax upon property as such. See Patton v. Brady, 184 U. S. 17, 618, 22 Sup. Ct. 493, 46 L. Ed. 713.

But, by whatever name the severance tax be called, the constitutional limit of 5¼ mills has no application thereto. That limitation applies only to state taxes laid from year to year on the same property. The severance tax is levied but once, and is in lieu not only of all other state taxes, but also of all parish, municipal, and local taxes and licenses.

It is simply inconceivable that the Constitution of 1921 meant to limit the total tax on lands, where natural resources were to be found, to 5¼ per cent. on the amount of the natural resources actually severed each year, whilst the state had previously levied yearly that full percentage on the whole value of such natural resources, besides levying thereon parish, municipal, and local taxes of double that amount or more, in addition to a license tax of 2 per cent. on the amount actually severed.

Nor does the severance tax discriminate against natural resources severed in this state and in favor of natural resources severed in other states. The two are not similarly situated. Natural resources severed in this state are freed fom all other taxes; natural resources severed in other states are subject to severance taxes, and may be directly or indirectly subject to other taxes, in the state of their origin. Hence they may be taxed differently. Heisler v. Thomas Colliery Co., 43 Sup. Ct. 83, 67 L. Ed. 237; Express Co. v. Seibert, 142 U. S. 339, 12 Sup. Ct. 250, 35 L. Ed. 1035; Kidd v. Alabama, 188 U. S. 733, 23 Sup. Ct. 401, 47 L. Ed. 669; Am. Sug. Ref. Co. v. Louisiana, 179 U. S. 95, 21 Sup. Ct. 43, 45 L. Ed. 102.

To hold that a state cannot levy a severance tax on the products of its own soil without levying a like tax on the products of the soil of other states would be simply to hold that a state cannot levy any severance tax at all. And so to hold would be simply to destroy one of the fairest methods of taxation yet devised, by means of a forced construction of the equal protection clause of the federal Constitution, and compel this state and others to return to the harsh resource of raising the same 3 per cent. or more as a license on production plus the 5¼ per cent. on the estimated value of the land and its natural deposits, plus parish, municipal, and local taxes and licenses.

For it must not be overlooked that although as to the *rate* of the tax, this case is an attack (and an unfounded one) only on the statute of 1922; yet as to the equal protection proposition it is an undisguised attack on the Constitution itself and on the whole scheme of the severance tax; but if

that scheme falls, it falls as a whole, since the Constitution could never have exempted natural resources from other taxes and licenses, if those natural resources were not subject to the severance tax.

This hastily drawn concurrence is intended not to develop, but merely to disclose, the germ of a thought, which appears to me to go to the very root of this controversy. In other words: (1) The severance tax is simply an excise tax; (2) even if it be a property tax, it is not limited to five and a quarter mills; (3) in any event, it is not an unlawful discrimination against the products of this state and in favor of those of other states; and (4) the severance tax, and consequent exemptions from other taxes, etc., is one indivisible scheme of taxation, and must stand or fall as a whole.

## On Rehearing.

LAND, J. [9] An application for rehearing was granted on behalf of defendant, in order that we might review that part of our former decision in which we required the defendant, supervisor of public accounts, in collecting the 3 per cent. severance tax, to give credit to plaintiff for the 2 per cent. license severance tax already paid, as of the date when it was paid.

A re-examination of the petition and prayer in this case discloses the fact that this is an injunction proceeding whose sole object is to restrain the defendant, supervisor of public accounts, from collecting the 3 per cent. severance tax imposed under Act 140 of 1922, on the ground that said tax and said act are unconstitutional.

The petition in this case neither alleges the payment of said license severance tax by plaintiff, nor claims credit for same on the amount of the severance tax to be collected during the year 1923. No such issue, therefore, is before us for decision in this case.

As was said by the United States Supreme Court:

"The duty of this court, as of every judicial tribunal, is limited to determining rights of persons or of property, which are actually controverted in the particular case before it. * * * No stipulation of parties or counsel, whether in the case before the court, or in any other case, can enlarge the power, or affect the duty of the court in this regard." California v. San Pablo & T. R., 149 U. S. 308, 13 Sup. Ct. 876, 37 L. Ed. 749.

Therefore, any discussion in this opinion as to whether plaintiff is entitled to judgment decreeing a credit for the license severance taxes paid, or whether the plaintiff can offset the amount of the severance tax to be collected by the state in 1923, with the debt due by the state to plaintiff for the amount of the license severance taxes paid, would be a discussion merely of a moot question.

[10] Nor has this situation been altered by the admission in the record that plaintiff paid the license severance taxes, as said admission was objected to by counsel for defendant as irrelevant to the issues, and said objection is obviously sound and well taken. It cannot be contended, therefore, that the issues as created by the pleadings have been enlarged by the admission made in the case.

[11] The money paid by plaintiff as license severance taxes, though wrongfully collected by the state, has gone into the public fisc, and, presumably, has been appropriated. Its withdrawal from the state treasury is prohibited by the Constitution, "except in pursuance of specific appropriation made by law." Const. 1921, art. 4, § 1.

This court, without any such issue properly before it, is powerless to remedy the situation, however equitable the considerations may be to induce a decree allowing a credit to plaintiff, even if the court might have such power in a proper case.

The sole method of relief, under the cir-

cumstances of the case, is clearly pointed out by the Constitution. It is by a specific appropriation by the Legislature. This is the orderly and constitutional remedy, and the only lawful means that may be resorted to in order to accomplish the desired end.

While this court is of the opinion that full justice should be done to plaintiff and to the other oil companies which have paid the license severance tax, yet we realize that this is a matter that properly addresses itself, in this case, to the good conscience and sense of justice of the Legislature, and not to the equity powers of this court.

[12] The Legislature being a co-ordinate branch of the state government, and charged under the organic law with the special duty of appropriating the state's alimony to meet public needs and to pay public debts, this court cannot assume, in advance, that the members of the lawmaking body of the state will be either tardy in action, or derelict in the discharge of their plain duty to make the necessary appropriations to reimburse plaintiff and the other oil companies for taxes illegally collected from them by the state. We cannot presume, at this time, that the representatives of the state are capable of repudiating just debts due by the state to its own citizens.

It is therefore ordered, adjudged, and decreed that our former decree be amended so as to deny and reject the credit given to plaintiff for the payment of the 2 per cent. license severance tax, and it is now ordered that said decree, as amended, be adopted as the judgment of this court.

O'NIELL, C. J., dissents.
ST. PAUL, J., dissents.
BRUNOT, J., takes no part.