**MISSISSIPPI RIVER FUEL CORPORATION**

v.

**Roland COCREHAM, Collector of Revenue of the State of Louisiana.**

**Civ. A. No. 2898.**

United States District Court
E. D. Louisiana,
Baton Rouge Division.

Nov. 30, 1965.

Clyde R. Brown, Shotwell & Brown, C. McVea Oliver, Oliver, Digby & Fudickar, Monroe, La., Clarence L. Yancey, Cook, Clark, Egan, Yancey & King, Shreveport, La., for plaintiff.

Emmett E. Batson, Chapman L. Sanford, Cyrus A. Greco, Attys., Dept. of Revenue, Baton Rouge, La., for Collector of Revenue, State of Louisiana.

WEST, District Judge:

In this suit plaintiff, Mississippi River Fuel Corporation, challenges the right of the defendant, State of Louisiana, through its Collector of Revenue, to levy and collect a severance tax on oil, gas, or other minerals severed from property located within the State of Louisiana but owned by the United States Government, and on which plaintiff, a private corporation, holds an oil and gas lease. In the year 1930, the United States acquired title from the City of Shreveport, the State of Louisiana, and the Board of Commissioners of Bossier Levee District to some 22,000 acres of land in Bossier Parish, Louisiana. During the years 1930, 1931, and 1932, the United States constructed runways, administration buildings, hospitals, barracks, machine shops, hangars, and other facilities required for the operation of an air base known as Barksdale Air Force Base. Since September 1, 1963, plaintiff, through its Natural Gas and Oil Division, has been producing oil and gas from certain portions of this property under and by virtue of certain oil and gas leases granted it by the United States on August 1, 1951, and February 1, 1961. Defendant, acting in his capacity as Collector of Revenue for the State of Louisiana, has demanded that plaintiff pay to the State of Louisiana severance taxes on all

oil and gas severed from the property in accordance with the provisions of Louisiana's Severance Tax Statute, LSA–R.S. 47:631 et seq. The defendant contends that severance taxes in the amount of $55,071.40 are due and owing for the month of September, 1963, and that additional severance taxes are due and owing for each month thereafter, the amount thereof to be figured by the quantity of gas and/or oil severed from the land as provided for by said statutes.

Plaintiff argues that the State of Louisiana is without authority to levy or collect this tax for the reason that exclusive jurisdiction over these lands from which the oil and gas is being produced has been lawfully acquired and is being exercised by the United States of America, and that any attempt on the part of the State of Louisiana to levy or collect these taxes constitutes an unlawful intrusion on the exclusive jurisdiction thus vested in the United States of America.

It is agreed by all parties that the State of Louisiana has made no effort to levy or collect severance taxes on the royalty interest of the United States in the oil and gas severed under these leases. The State is attempting only to levy and collect severance taxes on the oil and gas severed for the account of plaintiff.

This matter was argued to the Court, briefs were filed, and the matter submitted on the above stipulated facts. The only question before this Court is whether or not, when the United States acquired title to the land in question, it acquired such "exclusive jurisdiction" over the property as to preclude the State of Louisiana from levying and collecting a severance tax on oil and gas severed therefrom by a third party producing the oil and gas pursuant to a lease acquired from the United States. This Court concludes, for the following reasons, that the State of Louisiana does have the right to collect these taxes from the plaintiff, and that to do so in no way infringes upon the "exclusive jurisdiction" of the United States over the land in question.

The defendant readily concedes that the United States has exclusive jurisdiction over the land comprising Barksdale Air Force Base, but it does not agree that this exclusive jurisdiction extends to the oil and gas actually produced and severed from the land and thus reduced to possession and ownership by one other than the United States of America. It must be borne in mind that the State of Louisiana has not attempted to assess an ad valorem tax against the land owned by the United States, nor has it in any way attempted to assess a severance tax or any other form of tax against the United States. It clearly could not legally do this, and it has not attempted to do so. The only tax it has levied is a severance tax against the plaintiff, a private corporation, producing oil and gas under a lease which it happened to have acquired from the United States. The tax in question is assessed pursuant to the provisions of Article X, Section 21, of the Louisiana Constitution of 1921; LSA–R.S. 47:631; and LSA–R.S. 47:634. Article X, Section 21, of the Louisiana Constitution of 1921, provides, in pertinent part, as follows:

"Taxes may be levied on natural resources severed from the soil or water, to be paid proportionately by the owners thereof at the time of severance; * * * Such natural resources may be classified for the purpose of taxation and such taxes may be predicated upon either the quantity or value of the products at the time and place of severance. No severance tax shall be levied by any Parish or other local subdivision of the State.

"No further or additional tax or license shall be levied or imposed upon oil, gas or sulphur leases * * *."

LSA–R.S. 47:631 provides:

"Taxes as authorized by Section 21 of Article X of the Constitution of Louisiana, are hereby levied upon all natural resources severed from the soil or water, including * * * minerals such as oil, gas, * * *."

LSA–R.S. 47:634 provides:

" * * * (3) 'Severed' means the point at which the natural resources

are severed from the surface of the earth or water."

No one here in any way questions the right of the State of Louisiana generally to levy and collect severance taxes pursuant to the above mentioned provisions of law. The question presented is whether or not, by virtue of the "exclusive jurisdiction" acquired by the United States over the land from which the oil and gas is severed, the State has lost its taxing authority not only as it pertains to the land involved but also as it pertains to the oil and gas severed therefrom.

■ It is too well settled in the law of Louisiana to permit of argument that the oil and gas beneath the soil is not subject to ownership until it has been reduced to possession. See Frost-Johnson Lumber Company v. Salling's Heirs, 150 La. 756, 91 So. 207 (1922) and cases cited therein. While plaintiff argues strenuously that several cases both before and after Frost-Johnson establish the fact that the owner of the land also owns the oil and gas beneath it, its argument is not persuasive. Plaintiff apparently confuses the ownership of the oil and gas with the landowner's right to reduce the oil and gas to possession. This latter right does not confer ownership of the oil and gas prior to its severance from the land.

Plaintiff quotes from the case of Rives v. Gulf Refining Co., 133 La. 178, 62 So. 623 (1913), wherein the Supreme Court of the State of Louisiana stated:

"Oil and gas, until severed from the realty, are as much a part of it as coal or stone. So long as they remain in the ground outside of an artificial receptacle at least, as the casing of a well or a pipe line, they must be treated as a part of the realty underneath the surface where they lie. The owner of the surface is the owner of the oil and gas beneath it; but, if they escape into the land of another, he ceases to be the owner of them."

But plaintiff fails to quote what follows in that opinion, wherein the Court said:

"It has been said repeatedly by the courts and writers that the owner of the soil owns the gas and oil beneath its surface; and expressions to this effect will be found in Thornton's work on the Law Relating to Oil and Gas. This is an acknowledgment of the absolute ownership of the gas and oil beneath the surface by the owner of the land. But, under the Indiana decisions, which have met with the approval of the Supreme Court of the United States, the owner of the land has only a qualified right to the oil and gas beneath the surface—the rights to reduce it to possession and to exclude all others exercising the right on the premises—and title in him to it does not vest until he has reduced it to actual possession, either by bringing it into a well or into a pipe line, or into a tank or other receptacle in case of oil. Until that has happened the gas or oil by natural forces may escape from his land, and be reduced to possession by another, and become his property."

The Court then quoted, with approval, from the case of Heller v. Dailey, 28 Ind. App. 555, 63 N.E. 490, as follows:

"The owner of land is not, by virtue of his proprietorship thereof, the absolute owner of the oil and gas in and under it in its free and natural state, not yet reduced to actual control of any person, but he, together with the other owners of land in the gas field, has a qualified ownership, consisting of or amounting to his exclusive right to do what may be done on, through, or under his land (as making of wells) necessary to reduce the minerals to his possession, and, by thus acquiring the exclusive control to become the owner of the mineral substances as his personal property, * * *"

Strother v. Mangham, 138 La. 437, 70 So. 426 (1915), also cited by plaintiff, and also being a case decided before Frost-Johnson, does not stand for the

proposition that the owner of the land owns the minerals beneath it, but merely holds that the surface owner has the right to reduce the minerals to possession. Plaintiff further relies on such cases as Federal Land Bank of New Orleans v. Mulhern, 180 La. 627, 157 So. 370 (1934); Gliptis v. Fifteen Oil Company, 204 La. 896, 16 So.2d 471 (1944); Dixon v. American Liberty Oil Company, 226 La. 911, 77 So.2d 533 (1954); Gueno v. Medlenka, 238 La. 1081, 117 So.2d 817 (1960); United States v. Looney, 29 F. 2d 884 (CA5, 1929); and Buras v. Timolat, 275 F.2d 797 (CA5, 1960). But none of these cases support the plaintiff's position. In the Mulhern case, decided subsequent to Frost-Johnson, the Court, on rehearing, said:

"A rehearing was granted in this case because defendants contended that the opinion contained language which was in conflict with the well established jurisprudence of the state announced in * * * Frost-Johnson * * *, to the effect that natural gas beneath the soil is the property of no person and does not become the property of any one until it is reduced to possession. It was not the intention of the court to change or modify this well-recognized rule of law."

In Gliptis, the Court said:

"Plaintiff does not own the fugitive minerals, such as oil and gas, which are in, or which may pass through, the earth underneath the surface of the small area allotted to it by defendant for the drilling of a well."

In Dixon the Court said:

"It is true, of course, that the possession of the surface of the land does not of itself constitute possession of the minerals lying thereunder as minerals can only be possessed when they are severed from the soil."

The United States Court of Appeals for the Fifth Circuit in Looney, also followed this line of reasoning by holding that a royalty was not income until it had accrued. Finally, in the Buras case, while the Fifth Circuit Court of Appeals did say "We do not interpret any of the statutes or decisions placed before us as casting any doubt upon the postulate that perfect ownership of land includes the minerals in it," it cited none of the important cases in this area, and the Court finally concluded:

"What we have said is in justification of our holding that, under the cases cited, the district court should not have dismissed the action for failure to state a claim. We express no opinion as to what the holding of the trial court should be after it has, under such amended pleadings as the parties may elect to file, proceeded by appropriate means to discover the facts and apply the Louisiana laws to them."

Thus, this case cannot stand for the proposition here advanced by plaintiff.

In line with these well settled principles of Louisiana law, by which, under Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), this Court is bound, it is now once again held that ownership of the land itself does not carry with it ownership of the minerals thereunder but merely confers upon the landowner the right to reduce those minerals to possession. In other words, the minerals are not owned until they are reduced to possession.

Act 31 of the 1942 Louisiana Legislature, pursuant to which the lands in question were ceded to the United States provided:

"That the United States may enter upon and occupy any land in the State of Louisiana which it has heretofore acquired, or may hereafter acquire, by purchase, condemnation, lease or otherwise, required for sites for forts, magazines, arsenals, dockyards, and other needful buildings, or for any other purposes of the Government of the United States, and shall have the right of exclusive jurisdiction over the property so acquired, during the time that the United States shall be or remain the owner or lessee thereof, for all purposes, except that the State retains

the right to serve therein all civil and criminal process issuing under authority of the said State, and all lands so held and title to which is vested in the United States shall be and remain exempt from all state, parochial, municipal or other taxation, assessment or other charges which may be levied or imposed by or under authority of this State."

■ This statute provided that all *lands* so held by the United States would be exempt from taxation by the State. It did not provide that minerals, which became the property of others by extraction from the soil would also be exempt from a tax such as the severance tax here imposed. To paraphrase the Court's holding in Howard v. Commissioner of Sinking Fund of City of Louisville, 344 U.S. 624, 73 S.Ct. 465, 97 L.Ed. 617 (1953), when the United States, with the consent of Louisiana, acquired the property upon which the air base is located, the property did not cease to be a part of Louisiana. The geographical structure of Louisiana remained the same * * * a state may conform its municipal structure to its own plan, so long as the state does not interfere with the exercise of jurisdiction within the federal area by the United States. As pointed out by the United States Supreme Court in James Stewart & Co. v. Sadrakula, 309 U.S. 94, 60 S.Ct. 431, 84 L.Ed. 596 (1940):

"The Constitution does not command that every vestige of the laws of the former sovereignty must vanish. On the contrary its language has long been interpreted so as to permit the continuance until abrogated of those rules existing at the time of the surrender of sovereignty which govern the rights of the occupants of the territory transferred. This assures that no area however small will be left without a developed legal system for private rights. * * * Since only the law in effect at the time of the transfer of jurisdiction continues in force, future statutes of the state are not a part of the body of laws in the ceded area. Congressional action is necessary to keep it current. Consequently as defects become apparent legislation is enacted covering certain phases."

■ At the time this property was transferred to the United States in 1930, the principal of non-ownership of the minerals beneath the land was well established in Louisiana. See Frost-Johnson, supra, decided in 1922. The State of Louisiana, long before the United States Government's acquisition of this property, had, by appropriate legislation, been given the right to impose a severance tax on oil and gas severed from the land. Since the right of the State of Louisiana to tax these minerals when they are extracted from the earth and reduced to possession by someone other than the United States has never been abrogated, that right still exists. It is only the land or other property owned by the United States that is exempt from taxation by the state. It is well settled that the Louisiana severance tax is not a property tax. It is an excise tax upon the privilege of severing. It is not even a tax upon the ownership of oil and gas, but is an excise tax imposed upon the right to sever or produce the oil and gas. Gulf Refining Co. of Louisiana v. McFarland, 154 La. 251, 97 So. 433 (1923). Since the oil and gas was never owned by the United States, but was subject only to ownership by plaintiff upon its severance from the earth, and since the plaintiff had the exclusive right, as granted by its lease agreement with the United States to sever the oil and gas from this property, and since the plaintiff, a private corporation, has no sovereign immunity from taxation by the State of Louisiana, it follows that the State has every right to levy and collect this severance tax from the plaintiff herein. The imposition of such a tax in no way interferes with the exclusive jurisdiction of the United States over the land acquired by it from the State of Louisiana.

If there is any question remaining as to the right of the State of Louisiana to levy and collect this severance tax from

this plaintiff, it has been resolved clearly and concisely against the plaintiff by the decision of the United States Court of Appeals for the Fifth Circuit in the case of Mississippi River Fuel Corp. v. Fontenot, 234 F.2d 898 (1956), cert. den. 352 U. S. 916, 77 S.Ct. 213, 1 L.Ed.2d 122, a case involving the same parties as here involved and involving the same issues as here involved except that they pertained to severance taxes levied prior to 1956. The Court held adversely to the plaintiff in that case, its decision being clear and to the point. In the course of its opinion the Court said:

"Appellants stating by way of preface: that they are not seeking to avoid the payment of the taxes because they are the lessees of the United States or because of any relationship, contractual or otherwise, with the Federal Government; and that they do not in any way question or seek to limit the scope of the principle denying to persons dealing with the government immunity from state taxation; vigorously insist that the United States has exclusive jurisdiction over Barksdale Field and confidently invoke, as applicable here, the settled principle that a state may not exercise any legislative authority, including its taxing power in relation to property and activities of individuals and corporations within the territory where the United States has such jurisdiction.

"Insisting that what and all that is presented here is a conflict in jurisdiction between the State of Louisiana on the one hand and the United States on the other over Barksdale Airforce Base, one of the largest military installations in the nation, appellants' argument proceeds thus:

" 'The primary question in these suits, therefore, is whether the United States is vested with exclusive jurisdiction over Barksdale Air Force Base, the area from which minerals are being produced, and the area on which gas is gathered. If such jurisdiction is vested in the United States, then the taxes claimed cannot be collected for it is axiomatic that the taxing power of a state is limited to persons within, and subject to, such state's jurisdiction. * * *'

\* \* \* \* \* \*

"Whatever may be said of the abstract correctness of appellants' contentions, we think it quite clear that, as applied to this case they are all based upon the wholly incorrect assumption that the severance taxes in question represent an attempt on the part of the State of Louisiana to exercise legislative and executive jurisdiction over the lands in question by levying and collecting taxes upon property of the United States contrary to the provision of Act No. 12 of 1892, LSA–R.S. 52:1: * * *

"It thus appears that the object and purpose of the general severance tax and its effect is not to levy a tax upon the lands included in the base or upon the oil or gas while a part of the base. The tax is expressly made to apply not while the oil or gas is in the earth but when it is severed from its surface, and then it obliges the person severing to file a statement of his business and to pay the tax. In Louisiana, as is well known, there is no ownership of oil and gas in place, and neither in theory nor in fact is the tax here in question imposed upon it while it is a part of the soil or ground. Only after it reaches and is severed from the surface and becomes personal property does the tax fall upon the severer.

"Putting to one side all the refinements which have attended the long struggles over jurisdiction, as instanced in the cases, and over the effort to throw over private operations the protective mantle of governmental immunity, all that is presented for decision in this case is whether a severer of oil and gas, who, if he had taken it from any other

land in the state, would unquestionably be liable under the general laws of the state for the severance tax, can carve out of the fact, that it came from land which was a part of Barksdale Field, an exemption for himself against having to pay the tax on severing the oil and gas from the surface and appropriating it to his own use. For the same reason that the statute under which the exaction is made is a general excise statute, not directed at any particular person or property but at all persons who are severers, it cannot be said that the provision in the lease obliging the lessees, as one of the considerations for it, to pay the taxes, was not fully effective.

"In short, the provision must and will be construed so as to give it effect and as saying in effect that if, under the general laws of the state, the operator would be liable, he cannot draw around himself a cloak of immunity because the United States is lessor, but must, as a part of the consideration for the lease and his obligation under the statute, pay the taxes which the severance tax statutes impose. * * * "

That case also completely disposed of the plaintiffs' claim that the statute under which the severance tax was imposed is in violation of the United States Constitution. This holding could, and probably should have been held to have been res judicata to the present claim, but out of an abundance of caution, the Court allowed the entire matter to be here presented once again.

Plaintiff argues that the later case of Humble Pipeline Co. v. Waggonner, 376 U.S. 369, 84 S.Ct. 857, 11 L.Ed.2d 782 (1964), has the effect of overruling Mississippi Fuel Corp. v. Fontenot, supra. This contention is wholly without merit. The Humble case deals with the question of the right of the state to levy an ad valorem tax on a portion of the property located within the Barksdale Air Force Base. It has nothing whatsoever to do with the right of the State of Louisiana

to levy and collect a severance tax on minerals extracted from the earth. The plaintiff argues that there is no distinction between an ad valorem tax and a severance tax. This argument also is without merit. See Gulf Refining Co. of Louisiana v. McFarland, supra.

For these reasons, it is concluded that the State of Louisiana, through its Collector of Revenue, does have the right to levy against and collect from the plaintiff herein the severance taxes in question, and therefore, judgment will be rendered herein rejecting the demands of the plaintiff and dismissing this suit at plaintiff's cost.