390 F.2d 34
 MISSISSIPPI RIVER FUEL CORPORATION et al., Appellants,
v.
Roland COCREHAM, Collector of Revenue of the State of Louisiana, Appellee.
TEXAS GAS EXPLORATION CORPORATION, Appellant,
v.
Ashton J. MOUTON, Collector of Revenue of the State of Louisiana, Appellee.
 No. 23402.
 No. 23403.
 United States Court of Appeals Fifth Circuit.
 January 8, 1968.
 Supplemental Order in No. 23403 February 12, 1968.
 
 Clyde R. Brown, C. McVea Oliver, Monroe, La., Clarence L. Yancey, Thomas A. Harrell, Shreveport, La., for Miss. River Fuel Corp. and others.
 Clarence L. Yancey, Shreveport, La., for Texas Gas Exploration Corp.
 Emmett E. Batson, Baton Rouge, La., Joseph G. Hebert, George C. Schoenberger, Jr., Jess Johnson, Jr., New Orleans, La., Edwin L. Weisl, Asst. Atty. Gen., Roger P. Marquis, Atty., Dept. of Justice, Washington, D. C., for Cocreham.
 Emmett E. Batson, Baton Rouge, La., for Mouton.
 ON PETITION FOR REHEARING
 Before RIVES and WISDOM, Circuit Judges, and CONNALLY, District Judge.
 PER CURIAM:
 
 
 1
 Humble Pipe Line Co. v. Waggonner, 1964, 376 U.S. 369, 84 S.Ct. 857, 11 L.Ed.2d 782, holds that the United States has exclusive jurisdiction over Barksdale Air Base. The fact that in Humble the tax in question was an ad valorem tax on pipelines and equipment and not a severance tax, as in the cases now before the Court, was irrelevant to the decision. Except with the consent of the United States, the State's taxing power cannot operate within the confines of a federal enclave. Here the critical fact is that the incidence of taxation, the reduction of fugitive oil and gas to possession and ownership, takes place within the exclusive jurisdiction of the United States. The severance of the oil and gas is the subject of the tax; not the ownership.
 
 
 2
 With deference we suggest that the dissenting judge's error lies in the assumption that the State "owned" oil and gas under Barksdale; that the State had "never consented for the United States to acquire ownership of the oil and gas underlying the Barksdale Base". But under Louisiana law, the State, in a proprietary sense, did not "own" the oil and gas. Nor was there any question of the United States' acquiring "ownership" for which the consent of the State might be necessary. Louisiana considers oil and gas fugitive in nature. Like wild animals, these minerals are owned by no one — until they are reduced to possession. What a surface owner acquires in Louisiana when he acquires title to land is a right to explore for oil and gas and reduce these minerals to possession and ownership. These are the rights the United States acquired when the State transferred the land that is now Barksdale Air Base. For the State to have retained an interest in the minerals it would have had to reserve a mineral servitude, that is, a use, or the retention of the right to explore for minerals and to develop the mineral interest. See Frost-Johnson Lumber Company v. Salling's Heirs, 1922, 150 La. 756, 91 So. 207. See also Federal Land Bank v. Mulhern, 180 La. 627, 157 So. 370, 95 A.L.R. 948; Rives v. Gulf Refining Company, 133 La. 178, 62 So. 623; Dixon v. American Liberty Oil Company, 226 La. 911, 77 So.2d 533; Gueno v. Medlenka, 238 La. 1081, 117 So.2d 817.
 
 
 3
 The argument that in its sovereign capacity Louisiana has the power to impose a tax on the severance of oil and gas in a federal enclave collides with the Supremacy Clause. As Humble holds, a State may not legislate for a federal enclave within the exclusive legislative jurisdiction of Congress.
 
 
 4
 It is therefore ordered that the petitions for rehearing filed in the above entitled and numbered causes are hereby denied.
 
 RIVES, Circuit Judge (dissenting):
 
 5
 Upon further consideration, I am convinced that the Legislature of the State of Louisiana has never given "consent" for the acquisition by the United States of the oil and gas underlying the Barksdale Air Force Base or of the right to reduce that oil and gas to possession free from the State's severance tax.
 
 
 6
 Only by "consent" of the State could the federal government acquire ownership of the gas and oil or the unfettered right to reduce them to possession. Without the State's consent, the United States has power to purchase or condemn the land for public use. Kohl, et al. v. United States, 1875, 91 U.S. 367, 371, 372, 23 L. Ed. 449. In that event, however, its possession is simply that of an ordinary proprietor, and it does not have exclusive jurisdiction or the power to exercise exclusive legislation provided by Art. 1, § 8, cl. 17 of the United States Constitution. Paul v. United States, 1963, 371 U.S. 245, 264, 83 S.Ct. 426, 9 L.Ed.2d 292. Humble Pipe Line Co. v. Waggonner, 1964, 376 U.S. 369, 84 S.Ct. 857, 11 L.Ed. 2d 782, held invalid the State's ad valorem tax on pipelines and equipment. It did not decide the question of whether the State's "consent" extended so far as to permit acquisition by the United States of the oil and gas or of the unfettered right to reduce them to possession. The critical question present in this case is the extent of the State's "consent."
 
 
 7
 The "consent" of the Louisiana Legislature was for the United States to acquire the "land" and to "have the right of exclusive jurisdiction over the property so acquired." La.Acts 1892, No. 12, §§ 1, 2; Acts 1942, No. 31, § 1; La. Rev.Stat.1950, Tit. 52, § 1. In Louisiana, acquisition of the "land" does not pass title to the oil and gas underneath the surface. In 1930, when this land was acquired by the United States, that principle was well established. As was said by the learned district judge in the present case:
 
 
 8
 "It is too well settled in the law of Louisiana to permit of argument that the oil and gas beneath the soil is not subject to ownership until it has been reduced to possession. See Frost-Johnson Lumber Company v. Salling's Heirs, 150 La. 756, 91 So. 207 (1922) and cases cited therein. While plaintiff argues strenuously that several cases both before and after Frost-Johnson establish the fact that the owner of the land also owns the oil and gas beneath it, its argument is not persuasive. Plaintiff apparently confuses the ownership of the oil and gas with the landowner's right to reduce the oil and gas to possession. This latter right does not confer ownership of the oil and gas prior to its severance from the land."
 
 
 9
 Mississippi River Fuel Corp. v. Cocreham, E.D.La.1965, 247 F.Supp. 819, 822.
 
 
 10
 After discussing each of the cases relied on by plaintiff, the district judge re-stated the same principle of law:
 
 
 11
 "In line with these well settled principles of Louisiana law, by which, under Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), this Court is bound, it is now once again held that ownership of the land itself does not carry with it ownership of the minerals thereunder but merely confers upon the landowner the right to reduce those minerals to possession. In other words, the minerals are not owned until they are reduced to possession." 247 F.Supp. at 823.
 
 
 12
 The oil and gas were simply not a part of the property "purchased by consent of the legislature of the state" within the meaning of those words as used in Art. 1, § 8, cl. 17 of the Constitution.
 
 
 13
 The State Constitution, Art. 4, § 12 gave the Legislature and the State agencies and political corporations power to donate the land to the United States. The same Constitution, Art. X, § 21, as pointed out by the district judge (247 F.Supp. at 821), provided for a severance tax on gas and oil as follows:
 
 
 14
 "`Taxes may be levied on natural resources severed from the soil or water, to be paid proportionately by the owners thereof at the time of severance; * * * Such natural resources may be classified for the purpose of taxation and such taxes may be predicated upon either the quantity or value of the products at the time and place of severance. No severance tax shall be levied by any Parish or other local subdivision of the State.
 
 
 15
 "`No further or additional tax or license shall be levied or imposed upon oil, gas or sulphur leases * * *.'"
 
 
 16
 The severance tax so authorized by the constitution has been levied by the Legislature continuously, both before and since 1930 when the United States acquired the land. La.Acts 1922, No. 140; Acts 1932, No. 72, § 1; Acts 1935, 2nd Ex.Sess., No. 24, § 1; Acts 1940, No. 145; La.Rev.Stat.1950, Tit. 47, §§ 631-677.
 
 
 17
 Oil and gas are part of the natural resources of the State of Louisiana from which it derives a large part of its State revenue. The State has never consented for the United States to acquire ownership of the oil and gas underlying the Barksdale Base, nor has it given the federal government the unfettered right to reduce to possession that oil and gas, nor, a fortiori, oil and gas which may be drained from underneath adjacent lands.
 
 
 18
 It cannot be disputed that if the Legislature of Louisiana had expressly reserved to the State all rights to and jurisdiction of oil and gas as a part of its natural resources, that reservation would not have operated to deprive the United States of the enjoyment of the land for the purposes for which it was acquired but would have been a valid and effective reservation. James v. Dravo Contracting Co., 1937, 302 U.S. 134, 146, 58 S.Ct. 208, 82 L.Ed. 155. Both the State and the United States dealt with full knowledge of the law of Louisiana. That law with respect to oil and gas in place underneath the surface of the ground, and to the State's right to levy a charge on their severance from the soil resulted in such a reservation just as clearly as if it had been expressed by the Legislature at the time it gave its consent for the United States to acquire the land.
 
 
 19
 The conduct of the parties seems to recognize that the State did not part with its right to levy a tax on the severance of oil and gas from the soil. The United States acquired the land included in the Barksdale Base by acts or deeds of donation from three donors, viz., the City of Shreveport, the Board of Commissioners of the Bossier Levee District, and the State of Louisiana. Each deed conveyed title to different parts of the 22,000 acres of land included in the Barksdale Base.
 
 
 20
 Comparing the descriptions in the respective deeds with the descriptions in the oil and gas leases to the two appellants, it would seem that the oil and gas wells involved in this case are located mostly or entirely on land donated by the City of Shreveport or the Bossier Levee District. Neither of these political subdivisions had the power to donate the State's right to levy a severance tax on gas and oil for, as has been noted, that is a right of the State from which its political subdivisions are specifically excluded by Article X, Sec. 21 of the State Constitution. Further, it is particularly clear that the City of Shreveport had no intention to donate, or attempt to donate, any such right for its Act of Donation was amended before it was accepted by the United States by adding the following reservation: "There is hereby reserved to the grantor herein the royalties that may be produced from the oil and gas leases on said property until June 30, 1932, at which time this reservation shall ipso facto cease and determine." Presumptively, the State's severance tax was being, and continued to be, levied on that oil and gas. There was no effort to terminate the State's right to levy such a severance tax.
 
 
 21
 The State's Act of Donation was executed pursuant to Act No. 4 of the Legislature of Louisiana for the year 1930, which authorized the lands to be conveyed to the United States for the following purposes: "for an air port, flying field, landing field, military post and for military purposes." For the State to retain residual jurisdiction over the oil and gas underlying the Barksdale Base would not conflict with the purposes for which the Base was acquired.
 
 
 22
 Further, the oil and gas leases executed by the United States and by the appellants do not conflict with the State's retained jurisdiction, for each of those leases imposes the duty on the lessee "to pay when due, all taxes lawfully assessed and levied under the laws of the State or the United States upon improvements, oil and gas produced from the lands hereunder, or other rights, property, or assets of the lessee."
 
 
 23
 I have commented on Louisiana's peculiar concepts of oil and gas in place underneath the surface of the ground in two related respects: (1) Acquisition of the land does not pass title to the oil and gas; and (2) Article X, § 21 of Louisiana Constitution declares oil and gas to be "natural resources" upon which the State may levy taxes at the time and place of their severance from the soil or water. It seems to me, however, that, while those peculiarities of the Louisiana law make clear that the State did not part with its right to levy a severance tax, the same result should be reached in any other State when the State consents for the United States to acquire land for purposes foreign to the drilling of oil and gas wells. In such cases, I submit, the State does not consent to any non-taxed exhaustion of its oil and gas reserves.
 
 
 24
 For the foregoing reasons, it seems clear to me that the Louisiana law and the intention and conduct of all of the parties involved are in accord to the effect that the United States did not acquire the oil and gas underlying the Barksdale Base, nor did it acquire the right to reduce that oil and gas to possession free from the State's severance tax. It now seems to me that our decision in Mississippi River Fuel Corporation v. Fontenot, 5 Cir. 1956, 234 F.2d 898, was sound and has not been disapproved or overruled by Humble Pipe Line Co. v. Waggonner, 1964, 376 U.S. 369, 84 S.Ct. 857, 11 L.Ed.2d 782. I would therefore grant rehearing in both of these cases and respectfully dissent.
 
 RIVES, Circuit Judge (addenda to dissent):
 
 25
 My rambling and lengthy dissenting opinion was directed to a simple denial of the petitions for rehearing. Now my brothers' extended per curiam shows that I have failed clearly to express my views. Hence, at the risk of being tedious, I undertake to state my differences with my brothers' opinion on rehearing.
 
 
 26
 First, let me compare the opening sentence of the per curiam with the opening sentence of the Supreme Court's opinion in the case cited:
 
 
 27
 Per Curiam Supreme Court

 "Humble Pipe Line Co. v. Waggonner, "The common question these cases
 1964, 376 U.S. 369, 84 S. present is whether the United
 Ct. 857, 11 L.Ed.2d 782, holds that States has such exclusive jurisdiction
 the United States has exclusive over a 22,000-acre tract of
 jurisdiction over Barksdale Air land in Louisiana on which the
 Base." Barksdale Air Force Base is located
 that Louisiana is without
 jurisdiction to levy an ad valorem
 tax on privately owned property
 situated on the tract." (Emphasis
 added.)
 
 
 28
 Notwithstanding some broad expressions in the Supreme Court's opinion, it actually decided no more than the question presented. I submit that its decision does not conflict with our decision in Mississippi River Fuel Corporation v. Fontenot, supra, for the reason that Louisiana has never ceded nor relinquished its right to levy a tax or charge on the extraction of oil and gas which constitute a part of the State's natural resources.
 
 Second, my brothers say:
 
 29
 "Except with the consent of the United States, the State's taxing power cannot operate within the confines of a federal enclave."
 
 
 30
 With deference, I hold to a different concept of that principle of federalism. In Silas Mason Co. v. Tax Commission, 1937, 302 U.S. 186, 197, 58 S.Ct. 233, 239, 82 L.Ed. 187, the Supreme Court, speaking of the claim of the United States that it had acquired exclusive legislative authority which debarred the State from exercising its taxing power within the territory, said:
 
 
 31
 "The acquisition of title by the United States is not sufficient to effect that exclusion. It must appear that the State, by consent or cession, has transferred to the United States that residuum of jurisdiction which otherwise it would be free to exercise."
 
 
 32
 Third, according to my brothers, and here I must quote at more length:
 
 
 33
 "With deference we suggest that the dissenting judge's error lies in the assumption that the State `owned' oil and gas under Barksdale; that the State had `never consented for the United States to acquire ownership of the oil and gas underlying the Barksdale Base.' But under Louisiana law, the State, in a proprietary sense, did not `own' the oil and gas. Nor was there any question of the United States' acquiring `ownership' for which the consent of the State might be necessary. Louisiana considers oil and gas fugitive in nature."
 
 
 34
 I did not say that the State "owned" oil and gas under Barksdale "in a proprietary sense." I heartily agree that "Louisiana considers oil and gas fugitive in nature." Nonetheless, I have some doubt about my brothers' disparagement of the State's ownership of oil and gas. To me it seems to conflict with the historic claims asserted by Louisiana in United States v. Louisiana, 1950, 339 U.S. 699, 702, 70 S.Ct. 914, 915, 94 L. Ed. 1216:
 
 
 35
 "As affirmative defenses Louisiana asserts that she is the holder of fee simple title to all the lands, minerals, and other things in controversy; and that since she was admitted into the Union in 1812, she has exercised continuous, undisturbed and unchallenged sovereignty and possession over the property in question."[1]
 
 
 36
 I had not before heard those claims disputed as to lands lying within the State's boundaries. With deference to my brothers, I submit that the State's ownership of oil and gas is not disputed by the Louisiana Supreme Court in any of the five decisions cited in my brothers' per curiam. None of those cases involved any question of the State's ownership. The distinction was made clear in the leading case of Frost-Johnson Lumber Co. v. Salling's Heirs, 1920, 150 La. 756, 91 So. 207, 212:
 
 
 37
 "The doctrine stated in Rives v. Gulf Refining Co., 133 La. 178, 62 So. 623, that oil and gas beneath the surface of the earth are not subject to private ownership, was quoted again with approval in Elder v. Ellerbe, 135 La. 990, 995, 66 So. 337." (Emphasis added.)
 
 
 38
 Like doctrines in other states as to the right of property in oil and gas seem also to be confined to private ownership.[2]
 
 
 39
 What my dissent actually did say as to the State's ownership was that: "Oil and gas are part of the natural resources of the State of Louisiana from which it derives a large part of its State revenue."
 
 
 40
 I adhere to that statement. It finds support in Art. X, § 21 of the Louisiana Constitution, and has been clearly recognized by the Louisiana Supreme Court:
 
 
 41
 "One of the inherent powers of the State is to conserve her natural resources and to regulate the severance thereof. By constitutional provision, her authority to tax her resources is fixed."
 
 
 42
 State v. Standard Oil Co. of Louisiana, 1937, 188 La. 978, 178 So. 601, 610.
 
 
 43
 Fourth, and again I must quote several sentences from my brothers' per curiam:
 
 
 44
 "What a surface owner acquires in Louisiana when he acquires title to land is a right to explore for oil and gas and reduce these minerals to possession and ownership. These are the rights the United States acquired when the State transferred the land that is now Barksdale Air Base. For the State to have retained an interest in the minerals it would have had to reserve a mineral servitude, that is, a use, or the retention of the right to explore for minerals and to develop the mineral interest."
 
 
 45
 With deference, it seems to me the clear answer is to be found in the State's constitutionally reserved right to levy a charge or tax on its natural resources at the time of their severance from the soil or water. Louisiana Constitution, Art. X, § 21.[3] It seems to me that the United States on the one side and the State, City and Levee District on the other side evidence no intention for the State to cede or part with its power to levy a severance tax, and further as to the wells here involved, that the City and the Levee District could not relinquish that power belonging exclusively to the State.
 
 Fifth. Finally my brothers say:
 
 46
 "The argument that in its sovereign capacity Louisiana has the power to impose a tax on the severance of oil and gas in a federal enclave collides with the Supremacy Clause."
 
 
 47
 With deference, I submit that there is no such collision in this case because the State has never ceded or relinquished its power to impose such a tax.
 
 
 48
 I respectfully adhere to my dissent.
 
 Supplemental Order in No. 23403
 
 
 Notes:
 
 
 [1]
 See also United States v. Louisiana, 1967, 389 U.S. 55, 88 S.Ct. 367, 19 L.Ed.2d 383
 
 
 [2]
 See 24 Am.Jur. Gas & Oil, §§ 3 and 4 and cases cited
 
 
 [3]
 Surely the naming of that charge as a severancetax cannot change its substance or affect our decision.
 
 
 PER CURIAM:
 
 49
 It is ordered that the appellant's motion to vacate the recall of the mandate in the above entitled and numbered cause be, and the same is hereby denied.
 
 
 50
 It is further ordered that the appellant's motion to recall the stay of the mandate is denied.
 
 
 51
 By way of explanation, the Court states that the issues in the above case and those in Mississippi River Fuel Co. v. Cocrehan, are No. 24,402 are identical; that the facts stipulated in the Mississippi River Fuel case and the pre-trial order in the Mississippi River Fuel case, at the request of counsel for Texas Gas Exploration Corporation, were made the stipulation and pre-trial order, with minor changes, for trial of this case; that by motion of counsel for Texas Gas Exploration Corporation the briefs filed in the Mississippi River Fuel case in the Court of Appeal for the Fifth Circuit were adopted as the briefs in the instant case; that, for purposes of appeal, including the application for rehearing, this Court treated the two cases as if they were consolidated.